Christian, J.
This is one of the numerous cases which have arisen since the close of the late civil war, upon contracts entered into by the county courts of this commonwealth under the act passed March 9th, 1862, “authorizing the county courts to purchase and distribute salt amongst the people, and provide payment for the same.”
The main question which arose in the other cases, to wit. that said act was void, because contrary to that provision of the constitution (article 10, section 10) which declares that “no county, city or corporation, shall levy or collect any tax for the payment of any debt contracted for the purpose of aiding any rebellion against this state or the United States,” need not be further considered in this case, as it has been definitely settled by the decision of this court in the case of Dinwiddie County v. Stuart, Buchanan & Co., decided at the last Richmond term, and not yet reported. Supra 526. In this case it was held that said act was not in violation of said provision of the constitution, and that all contracts made in pursuance of its provisions were valid and could now be enforced against the counties. Upon this point, therefore, the decision in that case is conclusive of this.
In the case before us there are several other errors assigned to the judgment of the circuit court. It is necessary to notice only one, as the decision of the question therein raised will be conclusive of this case. That assignment of error is, that the circuit court erred in giving judgment against the county of Pulaski, '-‘because the record of the county court did not show that when the purchase of salt was ordered by said court “a majority of the justices of said county were present, or that the justices had been summoned to attend to act upon the matter,” as provided by the first section of the act of May 9th, 1862.
This same question was raised incidentally in the Dinwiddie case (supra). In that case, the judge delivering the opinion of the majority (and in this part of the opinion the whole court it is understood concurred) said: “I am further of opinion that the paper exhibited in the record as the bond of the county of Dinwiddie is invalid as a bond. Such invalidity, however, does not arise from any want of legal form. In form and legal effect it is a bond. It is an obligation on the part of the county of Dinwiddie to pay a sum certain to Stuart. Buchanan & Co.. it is sealed with the seal of the court; the seal is acknowledged in the body of the instrument as follows: “Being a bond created by order of the county court of Dinwiddie, made, &c., in pursuance of an act of the general assembly of Virginia,” &c. This is equivalent to *274 saying, “being an instrument under seal,” and is a sufficient recognition of the seal in the body of the instrument. But this paper is invalid as a bond of the county, because it does not appear in the record that at the court at which it had been executed the justices had all been summoned, or that a majority were present; indeed, it appears that only three justices were present. It cannot be presumed in a case like this that the justices had been summoned. This ought to appear affirmatively, and the record should show that a majority were present. The court was acting upon a matter, of special jurisdiction, conferred by a special statute, and upon a matter outside of its general jurisdiction. The *case does not therefore come within the doctrine declared by this court in Ballard & als. v. Thomas & Ammon, 19 Gratt. 14. Here the jurisdiction was special, fixed by a special statute, and must be exercised in accordance with the provisions of the statute; that is, either when the justices had all been summoned, or when a majority were present. The proceeding in this case (the execution of a bond) not being a judicial proceeding; within it,s ordinary jurisdiction, must be shown affirmatively to be strictly within the provisions^ of the statute within which the proceeding was' had.” ’ . ■
. The principles thus declared in the Dinwiddie case would seem to be conclusive of the case before us. But as it was urged by the able counsel for the appellees here that the question arose only incidentally in the Dinwiddie case, and that the attention of the court in that case was directed mainly to the great question of the constitutionality of the act, we have gladly permitted them t'o argue this point, as if no d'ecision had ever been made by this court in respect to it. And with an anxious desire to correct our judgment (if wrong) on this point, we have carefully considered their argument and the authorities upon which it was based, as well as all others at our command, apd our conclusion is, that both upon principle and authority the doctrines declared in the Dinwiddie case on this point are sound and true, and established by the decisions of the supreme court of the United States, as well as by the well considered decisions of the state courts.
It was argued by the learned counsel for the apellee that the case of Ballard & als. v. Thomas & Ammon, 19 Gratt. 14, was m opposition to the opinion of the court in the “Dinwiddie case;” and that to affirm the *Dinwiddie case would be to overrule the former case. These cases are perfectly consistent, and can well stand together. In the Dinwiddie case, the court distinguished that case from that of Ballard & als. v. Thomas & Ammon. The distinction is plain. In the Dinwiddie case, and in this case, the action of the county court was purely ministerial and not judicial. In the case of Ballard & als. v. Thomas & Ammon, the action of the court was judicial. Judge Joynes recognizes this distinction, and founds his opinion upon the ground that laying the county levy was a judicial act. He said (page 22): For while in the ássessment of th‘e tax the county court exercised power which does not come within the ordinary scope of judicial power, yet in the adjudication of the debts chargeable upon the county, on which rests the right of the creditor to proceed against the sheriff and his securities, the court exercises a power which is purely judicial in its nature, though it is not exercised in the usual form of judicial proceedings. The action of the court, in the exercise of such a power, cannot be questioned in a collateral proceeding.”
In Harvey v. Tyler, 2 Wall. U. S. R. 328, 342, the supreme court of the United States uses the^following language: “The jurisdiction which is now exercised by the common law courts in this country is, in a very large proportion, dependent upon special statutes conferring it. ***** In all cases where the new powers thus conferred'are to be brought into action in the usual form of common law and chancery proceedings, we apprehend there can be little doubt that the same presumptions as to the jurisdiction of the court and the conclusiveness of its action will be made as in cases falling more strictly within the usual power.s of the court. On the other hand, powers may *be conferred on the court and duties required of it, tobe exercised in a special and often summary manner, in which the order or judgment of the court can only be supported by a record which shows that it had jurisdiction of the case.”
In the case of Galpin v. Page, 18 Wall. U. S. R. 350, 370, Mr. Justice Field, in an able and exhaustive opinion in which he reviews many authorities, says, in noticing the argument of counsel in that case: “This reasoning would abolish the distinction in the presumptions of law when applied to the proceedings of a court of general jurisdiction acting within the scope of its general powers, and when applied to its proceedings had under_ special statutory authority. And, indeed, it is contended that there is no substantial ground for any distinction in such cases. The distinction, nevertheless, has long been made by courts of the highest character both in this country and in England and we had supposed its existence was not open to discussion.” “However high the authority to whom a special statutory power is delegated,” says Mr. Justice Coleridge, of the Queen’s Bench, “we must take care that in the exercise of it the facts giving jurisdiction plainly appear and that the terms of the statute are complied with.”
In Morse v. Presly, 5 Foster R. 299, referred to by Mr. Justice Field, the supreme court, of New^ Hampshire said: “A court of general jurisdiction may have special and summary powers wholly derived from statutes,, not exercised according to the course of the common law, and which do not belong to it as a court of general jurisdiction. In such cases its decisions must' be regarded and-treated like those of courts of limited and *275 special jurisdiction. The jurisdiction in such cases, both as to the subject matter of the judgment *and as to the persons to be affected by it, must appear by the record; and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it.”
In commenting upon the case, Mr. Justice Field, in Galpin v. Page (supra), p. 371, says: “The qualification here made, that the special powers conferred are not exercised according to the course of the common law. is important. When the special powers conferred are brought into action according to me course of mat law — that is, in the usual form of common law and chancery proceedings— * * * the same presumption of jurisdiction will usually attend the judgment of the court as in cases falling within its general powers. But where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction, upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgments of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record.”
From these cases, and the principles therein declared, may be extracted the following general legal propositions of universal. application:
1. Where a court of general jurisdiction acts within the scope of its general powers, its judgments will be presumed to be in accordance with its jurisdiction, and cannot be collaterally impeached.
2. So also when a court of general jurisdiction has conferred upon it special powers by special statute, and such special powers are exercised judicially, that is, according to the course of the common law and proceedings *in chancery, such judgment cannot be impeached collaterally.
3. But where a court of general jurisdiction has conferred upon it special and summary powers, wholly derived from statutes, and which do not belong to it as a court of general jurisdiction, and when such powers are not exercised according to the course of the common law, its action being ministerial only and not judicial, in such case its decision must be regarded and treated like those of courts of limited and special jurisdiction, and no such presumption of jurisdiction will attend the -judgment of the court. But in such cases the facts essential to the exercise of the special jurisdiction must appear upon the face of the record.
Applying these principles to the case before us, it is plain that the judgment of the circuit court must be reversed. While it is true that the county courts, which were clothed by the act of May 1862, with the power to purchase and distribute salt, were courts of general jurisdiction, yet such power did not belong to it as a court of general jurisdiction, but was a special summary power conferred by statute. It was a power purely ministerial, and was not exercised judicially according to the course of the common law. The conditions prescribed for the exercise of this special power, outside of the scope of its ordinary powers, were either that all the justices should be summoned or that a majority should be present. These were the essential and prerequisite facts necessary to confer this extraordinary and special power; and these facts must appear upon the record to give validity to the judgment. In such a case no presumption of jurisdiction will attend the action of the court.
*Certainly the power to purchase salt and bind the people of the several counties for its payment was not judicial power, to be exercised according to the course of the common law. It was a special and extraordinary power, to be exercised ministerially, and not judicially.
It was natural and proper in the highest degree that the legislature should throw around the exercise of this extraordinary power, by which the county courts could bind the people of the several counties of this commonwealth to the payment of millions of dollars, all the checks and restraints possible to secure its judicious exercise.
It was not intended that so large a power should be exercised by the ordinary county court, composed of but three justices of the peace; but, in order that a matter of such importance to the public should be properly considered, the statute provided that all the justices should be summoned or that a majority should be present. In a matter like this, purely ministerial, and in which all the people of the counties were interested, the justices of the peace were in a certain sense the representatives of the people, and, as such, were to judge both of the necessity of appropriating the people’s money and the extent of such appropriation.
To give validity to such action of the county court, the condition prescribed by the statute must be complied with, and it must so appear upon the record. The facts essential to give the cóurt jurisdiction must appear affirmatively, and no presumption of jurisdiction will attend the judgment.
Inasmuch, therefore, as it does not appear upon the record in this case that when 1.he contract was made by the county court of Pulaski with Stuart, Buchanan *& Co., for the purchase of salt, the justices of the peace had been summoned, or that a majority were present, I am of opinion, for the reasons above stated, that the judgment of the circuit court is erroneous and must be reversed.
The other iudn-^s concurred in the opinion of Christian, J. '
Judgment reversed.