Burks, J.
The jurisdiction of a court of equity in a case like the present, unless it has been taken away by *698 statute, is too well established to admit of dispute. Bull & others v. Read & others, 13 Gratt. 78; Goddin v. Crump, 8 Leigh, 120; Jones on Railroad Securities, § 268; 2 Dillon on Municipal Corporations, §§ 731, 732, 733, 734, tjancj cases cited in the two last-named works. It is insisted, however, by the learned counsel for the appellees that the equitable remedy has been superseded in -¡-Mg state by act of the legislature approved January 15, 1875. That act provides a l’emedy for contests, and a determination thereof, in elections held to take the sense of qualified voters on subscriptions to stock of internal improvement companies, and may be found in the Acts of Assembly for 1874-75, ch. 37, p. 29.
“In modern times,” says Mr. Justice Story, “couihsof law frequently interfere, and grant a remedy under circumstances in which it would certainly have been denied in earlier periods. And sometimes the legislature, by express enactments, has conferred on courts of law the same remedial faculty which belongs to courts of equity. How, in neither case, if courts of equity originally obtained and exercised jurisdiction, is that jurisdiction overturned or impaired by this change of the authority at law in regard to legislative enactments; for, unless there are prohibitory or restrictive words used, the uniform interpretation is that they confer concurrent and not exclusive remedial authority.” 1 Story’s Eq. Juris. § 80. It is an established principle of a court of equity never to abandon a jurisdiction which it has once assumed. Express statutory enactment can alone take away any part of the original jurisdiction of the court. Kerr’s Injunctions in Equity, 6. See, also, Wayland v. Tucker & others, 4 Gratt. 267.
There are no prohibitory or restrictive words in the act referred to, and there would seem to he nothing in the nature of the act or the language employed to *699 indicate an intent to make the new remedy thereby provided exclusive; and this opinion will proceed on the assumption that the equitable remedy exists.
The Danville and New River Railroad Company was incorporated by an act of the legislature approved March 29th, 1873 (Acts of 1872-3, ch. 286), and invested Avith all the powers, rights and piivileges necessary and proper to locate, construct and maintain a railroad, to he knoAvn as the Danville and New River NarroAV-Gauge railroad, to begin at or near Danville, in the county of Pittsylvania; thence by Martinsville, in Henry county; Patrick Courthouse; Ilillsville, in Carroll county, to some point on the Atlantic, Mississippi and Ohio railroad not east of Christiansburg. The act provides for the temporary organization of the company, and, among other provisions, contains the following: “ Any county or incorporated town or city along the line of said road, or any of its connecting branches, is hereby authorized, in the manner and under the rules and regulations prescribed by law, to subscribe to the capital stock of said company; and to this end it shall he the duty of the county courts of such counties, or the hustings court of such town or city, in their discretion, to cause a vote of the qualified voters to he taken in the manner prescribed by law, at such time as the president and directors of the Danville and NeAV River Narrow-Gauge railroad company may ask, and to .issue bonds in such form, running such lengths of time, and bearing such rates of interest, and payable at such periods and places, as such courts may determine.”
After the temporary organization of the company, authorized by the charter, had been effected, the proceedings complained of in this suit were had under the law as contained in §§ 62, 63, 64, 65, ch. 61, Code of 1873, terminating in a subscription by the supervisors, on be *700 half of the county of Henry, of one hundred thousand dollars to the capital stock of said company.
Ho fraud or corruption is charged against any officer, agent or other person concerned, but the allegation is, that the proceedings did not conform to the requirements of the statute in many particulars, which are specified, and are therefore invalid.
I propose to notice the assignments, of error set out in the petition for appeal as briefly as the nature of the case will admit, premising that I l’ecognize the rule contended for by the counsel for the appellants, that in cases like the present, the pi’ovisions of the law must be strictly pursued ; with this qualification, however, that a literal compliance in every particular,however unessential,is not required. If the rule were applied without the qualification, no subscription by a county or municipality under the statute would pi’obably stand the test. Substantial compliance with the law in evei’y essential featui’e is all that is necessary. “The sound doctrine,” says a learned author, “ is, that compliance, with all substantial or material conditions is essential.” 1 Dillon on Municipal cipal Corporations, § 108.
Hor must we fail to distinguish between provisions that are mandatory and such as are directory merely; by which latter is meant those provisions that are to be considered as giving directions which ought to be followed, but not as so limiting the power in respect to which the directions are given that it cannot effectually be exercised without observing them. Cooley’s Constitutional Limitations, 74, mai’g. p. Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or *701 in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute. Id. 78, marg. p.
The order of the county court directing the sense of the qualified voters to be taken on the question of subscription was sufficient. It is objected that the sheriff was not expressly required to act. That is so ; but the election was ordered to be held by the commissioners of election “in conformity to law.” So far as the agency of the sheriff was rendered necessary by the law, although not named in the order, he was within its operation.
Nor was it necessary, under the statute, that the commissioners of election should be designated by name in the order, as there were already commissioners “ legally appointed.” They had been appointed at the previous May term of the county court, whereas the statute requires that they shall be appointed at the April term. This provision of the statute is clearly directory. If they were appointed by the proper authority, that is sufficient. These commissioners acted, and the answer to the bill stated, and the statement is responsive, that they took the oatlirequired bylaw”, and a copy of the oath taken by the commissioners at the Martinsville voting place is filed, which oath is averred to be in substance the same as that taken by the commissioners at the other voting places.
The board of commissioners were appointed by the court, and before the election ordered had taken place, and it is insisted that the statute requires the appointment to be made by the judge invacation, and after the election takes place. If this be the proper construction of the statute, still the, objection has no force. Surely an act to be done by a judge in vacation may be done by him in term as well, and it would seem to be immaterial whether the board of commissioners *702 were appointed before or after the election, if appointed in time to discharge the duties devolved upon them. If, however, it was indispensable that the appointment should be made after the vote ordered had been taken, the appointment was substantially so made in this case. Four commissioners were appointed on the 9th day of August. On the 15th day of September (the fourth day .after the election) two of the commissioners, to-wit: John II. Schoolfihld and W. A. Sheffield, not being present to transact the business required of the board, others were substituted for them. The language of the order is: “ Ordered, that Dr. Jas. M. Smith and S. G. Whittle be appointed to act- in connection with George D. Grandy and B. F. Dyer as a board of commissioners for Henry county, as the law directs.” This order was substantially an appointment of all the members of the board.
■ The commissioners of election at the several voting places are required by the law to make their returns to the judge of the county court within two days after the election. The returns were made, but it does not appear whether they were made within the two days, and this is alleged as a defect in the proceedings. The returns were certainly made within a few days after the election, for they were examined by the board of commissioners on the 16th day of September, which was the fifth day- after ■ the election. The substantial purpose of the statute was accomplished, although the returns may not have been made within the two days, and, indeed, for aught that appears to the contrary, they were made within that time.
It is further objected that while the order of the court submitted the question to the voters whether there should be a subscription not exceeding one hundred thousand dollars, the vote was for that sum absolutely. In support of this objection, reliance is placed on the report of the *703 board of commissioners and the order of the county court convening the supervisors to make the subscription. There is nothing else in the record, as far as I have seen, even tending to show that the vote was for the subscription of an absolute sum. The recitals in the report of the commissioners have reference to the order of the court under which they acted, and I do not understand that they meant to affirm that the question voted on was different from the question submitted by the order. The order of court concerning the supervisors simply pursues the language of the report. It may have been supposed by the voters at the time they cast their .votes that if the result of the election was in favor of subscription, the maximum amount would Be subscribed by the supervisors, and those favoring subscription may have so desired; but we are not to presume that they voted in ignorance of the fact that the amount to be subscribed was, under the law, in the discretion of the supervisors, limited only as to the maximum sum.
It is contended that the computation and ascertainment of the number of the registered voters of the county, the number of votes cast at the election, the number voting for and the number against subscription, was a duty devolved, by the law, on the county court; and it is assigned as error that it was discharged by the board of commissionera and not by the court. This assignment of error seems not to he well founded. "We must construe the two sections in the Code (§§ 63, 64, ch. 61) together. While this duty is not expressly mentioned in the 63d section among the enumerated acts to be performed by the commissioners, yet it would seem to be plainly implied by the language employed in the 64th section: “ If it shall appear, by the report of the hoard of commissioners, that three-fifths of the qualified voters,” &c. The report is the basis for the court’s action, and from which it is *704 to determine whether three-fifths of the qualified voters of the county voting are in favor of subscription, and whether said three-fifths include a majority of the registered voters of the county and a majority of the votes cast by freeholders at the election. The commissioners, therefore, did not, in this case, transcend their authority in ascertaining the facts necessary for the action of the court.
But it is further insisted that if the commissioners were charged by the law with the duty of ascertaining and reporting the number of registered voters in the county, they violated the law in rejecting from the count voters whose names appeared on the registration books, and their report and the subsequent proceedings thereon were therefore invalid. I think the objection is well taken, so far as it applies to registered voters rejected from the court wholly upon extrinsic evidence. I think the commissioners should have been guided and controlled by the registration books. It does not appear that they erased any names from the books or added any. It appeared on the face of these books, which it would seem had not been recently revised, that there were marks or memoranda made by the registers, indicating the death or removal of voters whose names were still on the books. It was competent, I think, and proper for*the commissioners to omit these names from the count. I am satisfied from the evidence that if the names improperly rejected had been counted, the result of the election wouldnot havebeen changed; that is, there would have been still three-fifths of the qualified voters voting on the question in favor of subscription, and said three-fifths would have included a majority of the votes cast by freeholders at the election, and a majority of the registered voters of the county. Such being the *705 fact, the errors committed by the commissioners were not fatal to tlie proceedings.
At the term of the court next after the date of the commissioner’s report, to-wit: on the 11th day of October, 1875, the county court made the order before referred to convening the supervisors on the 23d day of that month, to carry into effect the wishes of the voters as expressed at the election, by subscribing on behalf of the county the sum of one hundred thousand dollars to the capital stock of the railroad company. I have already anticipated the objection made to this order. The form of the order of the court could not have the effect of limiting the powers of the supervisors in respect of the amour t of the subscription to be made, those powers being derived from the law and not from the court. The supervisors seem to have met, pursuant to the order, on the 23d day of October, and taking no action in the matter of the subscription, adjourned till the 9th of November, when they again adjourned till the 6th day of December. They then resolved to subscribe the sum of one hundred thousand dollars on behalf of the county whenever the people of Danville should vote a subscription of fifty thousand dollars. They seem to have taken no further action in the matter till the 8th of April, 1878, w’hen, on account "of the alleged delinquency of Danville in making any subscription, they passed a resolution annulling and rescinding, as far as they had the power, the vote for the subscription by the people of Henry county on the 11th day of September, 1875. On the 19th day of the same month (April) they adopted a similar resolution; and on the 28th day of June following, the voters of Danville having in May preceding voted a subscription of $50,000 to the stock of the company, the supervisors of Henry rescinded the resolutions of the 8th and 19th of April, resolved to make the subscription of *706 $100,000 to the stock of the company, and ordered their clerk to subscribe that sum on behalf of the county on the books of the company.
The resolutions of the 9th and 18th of April never, had any force, as it was not in the power of the supervisors to nullify the action of the people at the polls; but it is further contended, that the power of the supervisors to make the subscription was exhausted at their first meeting, when a majority were present and they failed then to make the subscription. That is not my construction of the statute (§ 65, ch. 61, Code 1873). The object of the statute would rather seem to be to require a' majority of the supervisors to be present whenever the subscription is made, and not to limit their power to act to the first meeting at which a majority may be present. If such limitation had been intended, it would doubtless have been plainly declared. Nor is there anything in the statute indicating the purpose to confine the exercise of the power to make the subscription to the supervisors in office at the time of the election.
Nor do I think there is any just ground for the complaint, that the supervisors delayed, as they did, in making the subscription. In less than three months after the election they entered on record their readiness and purpose to make the subscription as soon as the town of Danville should make a subscription of $50,000. This would seem to have been wise and reasonable, and as soon as the subscription was made by Danville, the supervisors made the subscription for the county of Henry.
Having disposed of the objections raised by the assignments of error contained in the petition for appeal, several other assignments, made at the bar, remain to be noticed.
One of them, based on the ground of the alleged want of power in the supervisors in office in 1878 to make the *707 subscription ordered in 1875, need not be further noticed after what has been already said in answering an objection in the petition of a somewhat similar character.
The other three assignments are founded on the assumption that the maximum amount of the subscription fixed by the order of the county court, of the 9th of August, 1875, exceeds the amount allowed by the statute, § 62, ch. 61, Code of 1873. The language of the statute is as follows: “The said order shall state the maximum amount proposed to be subscribed, which shall in no case exceed one-fifth of the total capital stock of said company, or an amount, the interest upon which, at the rate authorized by the council, or board of trustees, of any city or town, or board of supervisors of any county, or township board of any township shall (not*) require the imposition of an annual tax in excess of twenty cents on the one hundred dollars. * * * * *”
It is alleged that the interest on the maximum amount fixed by the order of court would require the imposition of an annual tax in excess of twenty cents on the one hundred dollars of the taxable property of Henry county, and that therefore the order and all the proceedings based thereon are void.
Certainly, if the fact alleged were true, and that fact appeared by the record in this case, the conclusion that the proceedings are void would necessarily follow. It is not pretended that the record discloses any such fact, but it is contended that the orders of the county court should show that the fact was otherwise-—that is, that the amount to be subscribed would not require an annual tax greater than twenty cents on the hundred dollars of taxable values in the county. There is no doubt of the correctness of the general proposition, that where courts are invested with a special and limited jurisdiction the *708 facts necessary to give jurisdiction of the subject matter should appear by their records. Such was the case of ■ Pulaski County v. Stuart, Buchanan & Co., 28 Gratt. 872. By statute the county court, composed of justices of the peace, was empowered to provide for the purchase and distribution of salt among the people, and it was required, before the court could act, that a majority of the acting justices should be present, or that all should have been summoned to attend; and it was held that to give validity to the orders of the court it was necessary that the record of the court should show, when the court acted, either that a majority of the justices were', present or that all had been summoned. ‘Without these facts appearing, it would not appear that the court had jurisdiction of the matter with which it was charged. So, in the present case, while the general law invests the county court with jurisdiction to order, without special application from any source, an election to determine whether there shall be a subscription to the capital stock of a railroad company, yet the special act incorporating the Danville and New River railroad company makes it the duty of the county court, in its discretion, to cause a vote of the qualified voters to be taken at such time as the president and directors of the company may ask. To authorize the action of the court as provided, it would seem to be necessary that it should be taken on the application of the president and directors of the company, and probably it might be considered essential to the jurisdiction of the court that that fact should appear by the records of the court. The fact does so appear, and, if that be necessary, it would seem to be all that need appear by the record to show that the court had jurisdiction of the subject matter.
But if the order of the court is not to be considered invalid for the reasons already assigned, we are asked to go a step further, and decide that it is invalid by reason *709 of alleged extrinsic facts—facts not appearing by the record. To ascertain these facts, we are asked to take judicial notice of the auditor’s reports, and of the books showing the assessments of property and the contents of those books. When it is said that the court will take judicial notice of any fact, the meaning is that such facts need not be proved in the ordinary manner. They may be noticed without being proved in the case. Can such notice be taken by this court of the books referred to and of their contents ? I think not. I can find no precedent to justify it. There are many facts of which courts will take judicial notice, and they are specified in the approved elementary works on evidence. 1 Greenleaf’s Ev. § 6 and notes; 1 Phillips’ Ev. 619, 620 (marg. pp.) and notes. Among other things they will take notice, without proof, of the public laws of the state; of the sittings of the legislature, and its established and usual course of proceeding; the privileges of its members, but not the transactions on its journals; of historical facts, and generally, it is said, of whatever ought to be generally known within the limits of their jurisdiction. The assessments of property are made for the purposes of taxation, and the books containing them may be and are resorted to for that purpose by the authorities charged with the duty of levying taxes. But, when in a judicial proceeding, it becomes necessary to resort to those books to establish any fact arising in the cause, such fact, I apprehend, must be established in the ordinary way by producing the books as evidence in the cause.
Chief Justice -Marshall, in a case whfere one of the questions was whether the court would take judicial notice of a pardon, observed that “ it is a constituent part of the judicial system that the judge sees only with judicial eyes, and knows nothing respecting any particular case of which he is not informed judicially. A private deed not communicated to him, whatever *710 may be its character, whether a pardon or a release, is totally unknown and cannot be acted on. The looseness which would be introduced into judicial proceedings would prove fatal to the great principles of justice if the judge might notice and act ujoon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and overturn those rules which have been settled by the wisdom of ages.” United States v. Wilson, 7 Peters’ R. 150, 161. And in a very recent case decided by the supreme court of the United States, Mr. Justice Swayne, in the opinion of the court delivered by him, speaking of notorious facts of which the-court will take judicial notice, said: “ This power is-to be exercised by courts with great caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative.” Brown & others v. Piper, 91 U. S. R. (1 Otto) 37, 42, 43.
• But the assignment of error relied on requires us to go still further. We are asked not only to take notice of certain facts which we cannot know judicially, but of facts which are not in issue in the cause, nor relevant to any issue made. It -is nowhere in the record made a question whether the maximum amount of the subscription- fixed by the county court of Henry exceeds the amount allowed by the statute. Although the bill states with great ¡larticularity and minuteness of detail numerous objections to the proceedings complained of, and' the grounds of those objections, it does not allege, directly or indirectly, or even insinuate that the maximum amount of the subscription was in excess of the amount allowed by law. Ho allusion is made to it in the bill, answer, or in the proofs. If intended to be relied on it should have been put in issue. It was matter of fact susceptible of proof or disproof. *711 Under these circumstances it would be an anomaly for an appellate court to reverse a decree for the causes-alleged. We can only review the case made, and as made by the parties in the court below. We cannot go outside of the record and decide a case upon facts dehors. This would, in my judgment, be a palpable and flagrant abuse of appellate jurisdiction.
Since the foregoing opinion was written, it has come to my knowledge that the governor of the commonwealth has approved an act passed by the general assembly authorizing the supervisors of Henry county to carry out the wishes of the majority of the voters of Henry county, as expressed by the vote taken on the 11th day September, 1875, and to assess and levy such annual tax as may be necessary to pay the subscription of one hundred thousand dollars, notwithstanding the limitations prescribed by the 62d section of chapter 61 of the Code.
The conclusions which I have reached in this case are independent of the special act referred to, but it may he as well to say that if there w'ere any defects or irregularities in the proceedings reviewed in this opinion, w'hich might offset the subscription made by the supervisors, they are cured by this legislation. That such legislation is valid seems to be wrell settled. Defective subscriptions may in all cases be ratified where the legislature could have originally conferred the power. Mistakes and irregularities are of frequent occurrence in municipal elections, and the state legislatures have often had occasion to pass laws to obviate such difficulties. Such laws, when they do not impair any contract, or injuriously affect the rights of third persons, are never regarded as objectionable, and certainly are w'itbin the competency of the legislative authority. St. Joseph Township v. Rogers, 16 Wall. U. S. R. 644, 663, 664. Authorities to the same effect are numerous. Among them are the following: Ritchic v. Franklin County, 22 Wall. *712 U. S. R. 867; Thompson v. Lee County, 3 Wall. U. S. R 327; Campbell v. City of Kenosha, 5 Wall. U. S. R 194; City v. Lamson, 9 Wall. U. S. R 477, 485; Brewster v. City of Syracuse, 19 N. Y. R 116; Gould v. Town of Sterling, 23 N. Y. R. 457; City of Bridgeport v. R. Road Company, 15 Conn. R 475, 495; McMillen v. County Judge, &c., 6 Iowa R. 391; Cooley on Con. Lim. 225, et seq.; 1 Dillon on Mun. Corp. (2d ed.), § 424, note 1.
Upon the whole case, I ara of opinion to affirm the decree of the circuit court.
The other judges concurred in the opinion of Burles, J.
Decree affirmed.

This word “ not ” 3s evidently Snadvertently Snserted 3n the statute. It sliould be omitted In the reading.