58    84
61   543
61   581
61   589

## BLAND v. FLEEMAN.

### Opinion delivered July 1, 1893.

1. *Fraud—Purchase of trust property by trustee.*
   Where an administrator sells land of the estate, a subsequent purchase of the land by him from the vendee, made before the sale is confirmed, is equivalent to a purchase at his own sale, and is constructively fraudulent.

2. *Limitation—Begins to run, when.*
   In the absence of actual fraud, the statute of limitations begins to run, in favor of an administrator who purchases land of the estate at his own sale, from the time the parties in interest are apprised that the sale to him has been confirmed, notwithstanding the administration has not been closed.

3. *Notice—Knowledge of facts leading to inquiry.*

Notice of facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose.

4. *Statutes of limitation—Binding in equity.*

Mansf. Dig. sec. 4474, providing that actions for the recovery of lands sold at judicial sales shall be brought within five years after the date of such sales, as well as the general statute of seven years (Mansf. Dig. sec. 4471), is binding upon courts of equity, as well as of law, unless the delay after the cause of action accrued was superinduced by fraud or concealment.

5. *Limitation—Constructive trust.*

Where an administrator purchases land under execution in favor of the estate, he becomes clothed with a constructive trust in favor of the estate which will be barred by the statutes of limitation.

Appeal from Franklin Circuit Court in Chancery, Ozark District.

HUGH F. THOMASON, Judge.

*U. M. & G. B. Rose* and *J. V. Bourland* for Bland, et al.

1. *Fraud.* The payment to Parkes on a claim, never probated, of $1000 was an express violation of law. Mansf. Dig. sec. 103. The keeping open the administration for twelve years was in line and keeping with other fraudulent acts. 53 Ark. 232; Mansf. Dig. 206. Courts of chancery are still able to ferret out acts of fraud and relieve against them. 20 Ark. 527; 40 *id.* 407; 53 Ark. 232. The purchase of lot 3 before confirmation avoided the sale as fraudulent. 55 Ark. 85. It was also the homestead. 47 *id.* 445. Lot three was not inserted in the petition to sell, nor order of sale, and the court had no jurisdiction. The sale was void. 55 Ark. 562; 47 *id.* 218; 26 *id.* 257; 72 Ala. 7; 64 Mo. 518; 1 Story, 478; 11 Ark. 375; 1 Wall. 636.

2. *The statute of limitations.* As to whether a purchase by an administrator at his own sale is void or voidable, see 12 Am. & Eng. Enc. Law, p. 222, note;

44 N. Y. 237; 25 Ark. 306; 32 *id*. 619; 48 *id*. 489; .4 How. (U. S.), 557; notes to *Hindman* v. *O'Connor*, 13 Law Rep. An. 493. However, the law is well settled that the statute does not begin to run in favor of an administrator as against the heirs until he is discharged from his trust.    18 Ark. 495; 22 *id*. 473; 28 *id*. 19; 42 *id*. 28; 48 *id*. 248.    It would not begin to run until demand made, after his discharge.    22 Ark. 1; Wood on Lim. sec. 200.

3. *Laches*. Under the facts of this case, laches cannot be imputed to the heirs.    2 Wall. 87; 2 Eden, 285; 6 Wheat. 481; 4 How. 503; 29 Ark. 591; 5 How. 276; 18 Wall. 493; 43 Ark. 35; 107 Mass. 313; 11 Pick. 173; 28 Miss. 466; 22 Ark. 7; 46 Ark. 25; 48 *id*. 250. The heirs had every confidence in Fleeman—they had no suspicions. The sale as made never was confirmed. The purchases by Fleeman were concealed and were never submitted to the probate court for confirmation. To fix acquiesence on a party, it must appear that he knew the facts.    10 Ves. 428; 29 Ark. 135; 28 *id*. 64; 2 Selden, 268; Perry, Trusts, sec. 230; 1 Jac. & Walk. 67; 5 H. S. C. 627; 12 Vesey, 355; 5 Ball & B. 345; 16 Md. 456; 3 Stock. 23. Independently of peculiar circumstances, equity adopts as a bar the period which bars a suit at law.    3 Sumner, 486; 1 White & T. L. C. in Eq. 258. A trustee cannot set up an adverse holding against his *cesiui que trust*. Perry on Trusts, sec. 863. His possession as administrator was not notice of any new right claimed by him.    51 Miss. 146.    See also 12 Sup. Ct. Rep. 425. The law of constructive notice can never be so applied as to relieve a party from responsibility for actual misstatements and frauds.    14 Mich. 604; 90 Am. Dec. 239; 84 *id*. 589; 115 U. S. 538; 21 Wall. 342; 111 U. S. 190.

*J. E. Cravens* and *J. M. Moore* for Fleeman.

1.   No actual fraud is shown in the accounts and settlements.   Chancery will not interfere to correct mere irregularities or errors.   50 Ark. 222; 48 *Id*. 547; 36 *Id*. 390; 39 *Id*. 257; 50 *Id*. 228; 51 *Id:* 16; 33 *Id*. 733.   The transactions occurred many years ago, and if any cause of action ever existed, it is barred.   42 Ark. 491.

2.   There was no fraud in connection with the sale and purchase of the land.

3.   The omission of lot 3 from the petition and order of sale was a mere clerical omission, and did not render the sale void.   The probate court acquires jurisdiction over the estate.   10 Ark. 549; 19 *Id*. 515-16.   It proceeds *in rem*. 14 *Id*. 252-3; 11 Mass. 226; 2 Peters, 62.   See cases 31 Ark. 74; 25 *Id*. 58; 30 Fed. Rep. 250; *Ib*. 246.   Confirmation cures defects in proceedings. 47 Ark. 417; 52 *Id*. 342.   Misdescriptions or clerical errors may be corrected.   33 Ark. 296; 28 *Id*. 372; *Ib*. 120; 49 *Id*. 406.

4.   Plaintiffs are barred by lapse of time and acquiescence.   55 Ark. 85; 7 S. & M. (Miss.), 409; 7 Pick. 6; 101 U. S. 139; 28 Fed. Rep. 276; 40 Fed. Rep. 774; 36 Ark. 401; 30 N. W. Rep. 9; 2 Wall. 95.   A disavowal of a trust puts the statute in motion.   His possession becomes adverse from the time he repudiates or disavows it.   7 Johns. Ch. 90; 3 Peters. 52; 4 Mason. 151-2; 10 Peters, 223.   Where a trustee denies the right of the *cestui que trust*, his holding becomes adverse. 115 U. S. 151; 120 *Id*. 386; 20 Mo. 538; Strobh. Eq. S. C. 340.   The administration as to this land virtually closed in 1874.   As to it he had no further duties to perform.   Notorious acts of hostility to the title of the *cestui que trust* are a renunciation of the trust.   22 Ark. 1; 16 Ark. 122.   In 46 Ark. 25, the court say that the doctrine that the statute will not bar an express trust is

subject to two qualifications.    See p. 34.    See also 48 Ark. 248; Wood on Lim. sec. 205; 2 Perry on Trusts, sec. 863; 53 Pa. St. 352; 5 Ind. 259.    Even if the purchase by Fleeman was *void*, the deed of Parkes & Quaile gave *color of title* which supports adverse possession and puts the statute in motion.    13 How. 477; 21 Ark. 370; 34 *Id.* 547.

JOHN FLETCHER, Special Judge.    R. H. Adams died in 1863.    On November 19, 1865, M. F. Fleeman married his widow, and, on November 27, 1865, he took out letters of administration upon the estate of Adams. Fleeman made regular annual settlements in the probate court up to 1875, but his final settlement was not made until August 4, 1880, at which time he was discharged.

On 26th day of December, 1883, a part of the heirs interested in the estate, and who were non-residents, brought suit in the United States court at Fort Smith, Arkansas, against Fleeman and the other heirs, who were residents of this State, for the purpose of falsifying the settlements of Fleeman and to recover lands of the estate which, it was alleged, Fleeman had fraudulently sold and caused to be purchased for his benefit.    That suit was on April 24, 1887, dismissed for the want of jurisdiction, and, on the 24th day of May, 1887, this suit was brought by all the heirs, in the Franklin circuit court in chancery, for the same purpose.    From the decree of the court below all the parties have appealed.

As to certain claims probated against the estate and which, it is alleged, were fraudulently allowed by the administrator, the circuit court decided there was no fraud; and, as to the accounts of Fleeman, the court found, to use the language of the decree, that there were "no such errors arising from fraud, accident or mistake as to justify opening the same, that such irreg-

ularities as appear therein may have been susceptible of explanation at the time, whilst not so after so long a lapse of time, for which reason the court declines to disturb the settlements." We have carefully examined the record, and as to this we think the conclusions of the circuit judge are correct.

The lands are designated in the record as lots 1 to 7 inclusive. The leading questions in the case arise as to lots 2 and 3. These two tracts were sold by Fleeman, as administrator, at public sale on January 6, 1868, for the purpose of paying debts probated against the estate. Prior to the sale, Perry F. Webb, a neighbor of Fleeman, in conversation with Fleeman's wife, expressed a desire to purchase lot 2, but said he did not feel able to pay for it on so short credit as was to be given. Mrs. Fleeman informed him that she would like to have a half interest in this tract, and would take half at whatever price he might pay. She also requested Webb to bid off lot 3 for her at the sale. This tract (lot 3) had been previously set apart to her as her dower in the lands of R. H. Adams, and only the remainder interest was advertised for sale. Webb bid off lot 2 at the sale for $6,000.00 in his own name; but lot 3 brought so much more than was anticipated by Webb that he ceased bidding, and it was purchased by Parkes & Quaile for $3,845.00. Whether Fleeman knew of the arrangement between Webb and Mrs. Fleeman, we need not inquire. We find that, before the sale was confirmed, he entered into an agreement with Webb to take the half of lot 2 adjoining lot 3 at the same price which Webb bid for it, and, when Webb's note for $6,000.00 became due, he allowed him credit for one-half thereof, and charged himself as administrator with it. This tract sold for within $255.00 of its appraised value, and within about $1,800.00 of the price which Adams gave for it just before the war. We are unable to say from the evidence

1. As to<br>purchase of<br>trust property<br>by trustee.

that there was any positive or actual fraud .in the sale
of this tract, but the fact that Fleeman acquired an
interest in the land before the sale was confirmed was
equivalent to a purchase at his own sale, and the law
condemns it as fraudulent.      *Woodard* v. *Jaggers*, 48
Ark. 250 ; *Gibson* v. *Herriott*, 55 Ark. 92 ; *McGaughey*
v. *Brown*, 46 Ark. 32.

2. When
statute of lim-
itation begins
to run.

Fleeman pleads the statutes of five and seven years
limitations.   But it is argued by counsel for plaintiffs
that the statute was not set in motion in his favor until
after his final settlement and discharge, August 4,
1880, and that five years did not thereafter elapse before
the bringing of the first suit.

The rule, we believe, is universally established that
the statute will not bar an express trust.   " But this
doctrine " says Chief Justice Cockrill, in *McGaughey* v.
*Brown*, 46 Ark. 34, "is subject to two qualifications,
namely, that no circumstances exist to raise a presump-
tion of the extinguishment of the trust, and that no
open denial or repudiation of the trust is brought home
to the knowledge of the parties in interest which re-
quires them to act as upon an asserted adverse title."
Citing Angell on Lim. 174, 472; Wood on Lim. 212,
213 ; *Harriet* v. *Swan*, 18 Ark. 495.

The sale to Webb was reported .to the probate
court, and was confirmed on February 4, 1868.   The
purchase money was regularly accounted for and paid
out to the parties entitled thereto, and the accounts of
the administrator regularly approved by the court.   In
so far as the probate court was concerned, the property
passed from the trust, and the administrator was dis-
charged therefrom.   *Fort* v. *Blagg*, 38 Ark. 475.

The sale was not void but voidable, and the parties
interested had their right of action to set it aside at any
time after being apprised of the facts of the purchase
by Fleeman.   *McGaughey* v. *Brown*, 46 Ark. 32;

*Woodard* v. *Jaggers*, 48 Ark. 250; *Gibson* v. *Herriott*, 55 Ark. 92; *Musselman* v. *Eshleman*, 10 Pa. St. 394, S. C. 51 Am. Dec. 493; *Worthy* v. *Johnson*, 8 Ga. 236, S. C. 52 Am. Dec. 403.

The fact that the administration had not been closed was no impediment to plaintiff's right of action. We can see no reason why they could not and should not have sued before as well as after the final settlement and discharge of the administrator, unless it be that they were not apprised of the facts which rendered the sale and purchase by Fleeman invalid. In *Keeton* v. *Keeton*, 20 Mo. 541, the administrator purchased property at a sale made by himself, as was done in this case. The court said: "With regard to the statute of limitations, it will run from the time the facts are brought home to the knowledge of the party. He then has a cause of action, and there is no reason for placing him in a better situation than any other suitor. Having a cause and being fully aware of it, there is nothing to prevent the statute from running against him." 1 Bigelow on Fraud, 33.

Actual notice of the evidence or facts upon which an action may be sustained is not necessary to put the statute in motion. As said by the United States Circuit Court of Appeals, Eighth Circuit, in *Percy* v. *Cockrill*, 53 Fed. Rep. 875: "Notice of facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have lead. Where a person has sufficient information to lead him to a fact, he shall be deemed conversant with it." Citing *Kennedy* v. *Green*, 3 Mylne & K. 699, 722; *Wood* v. *Carpenter*, 101 U. S. 135, 141; *Rugan*

3. Knowledge of facts leading to inquiry.

v. *Sabin*, 53 Fed. Rep. 415 ; *Parker* v. *Kuhn*, 21 Neb. 413, 421, 426, 32 N. W. Rep. 74 ; *Wright* v. *Davis*, 28 Neb. 479, 483, 44 N. W. Rep. 490.   See also Buswell on Limitations, sec. 385 ; *Pearsall* v. *Smith*, 149 U. S. 231.

Both W. W. Adams and Mrs. Bland, the ancestor of all the plaintiffs, except Adams, were advised of the sale of the lands.   Adams lived with Fleeman on lot 3, which adjoins lot 2, from the date of the sale until after he became of age in 1877.   He testified that he knew, "ever since soon after the sale in 1868, that Fleeman claimed to be the owner of a half interest in lot 2, of the reversionary interest in lot 3, and since his wife's death in May, 1872, the absolute owner of lot 3," and that he had always heard while living with Fleeman that Parkes and Webb purchased the land at the sale.   He was engaged in business on his own account since 1875.   So far as the testimony shows, no effort was made by Fleeman or any one to conceal the facts of his purchase. Webb and Parkes & Quaile, the purchasers at the probate sale, lived at or near Ozark where Adams did business.   The probate court records showed the sales by Fleeman, and, when confirmed, Fleeman's deeds from Webb and from Parkes & Quaile were of record in the recorder's office, and the deed from Parkes & Quaile bore date before the sale was confirmed by the court. R. A. Bland, a son of Mrs. Bland and one of the plaintiffs, visited Franklin county, ten or twelve years before the first suit was brought, to get information in regard to the estate, and the papers in the estate were shown him and the business explained to him by one of Fleeman's attorneys.

In May, 1874, Mrs. Bland wrote Fleeman a letter enquiring about the estate and the lands which had been set apart to Mrs. Fleeman as dower.   This letter was answered by Walker & Mansfield, Fleeman's attorneys,

who informed her that the administration was kept open because it was thought something might possibly be had upon one or two claims due the estate and still unsettled, and inviting an investigation of all the acts of the administrator. She was also informed that "the reversionary interest or estate in remainder, in the lands held as dower was sold by order of the court to the highest bidder and purchased by Quaile & Parkes, and that Fleeman had purchased from them at an advance of $1000 on the price they gave for it." In conclusion they said to her : "But those interested in the question as to this, or the manner in which Mr. Fleeman has administered upon Mr. Adams' estate, are not expected to take our opinion, or even any statement of facts by us, as being correct. They are expected to look into those matters for themselves or through their own attorneys."

It is apparent that, at least as early as 1874 or 1875, all the material facts going to establish plaintiffs' cause of action were known to W. W. Adams and Mrs. Bland, as appeared of record, except the fact that Fleeman's purchase was made before the confirmation of his sale, and this fact could have been as easily discovered in 1875 as in 1883. *Leach* v. *Moore*, 57 Ark. 583.

It is true that W. W. Adams did not become of age until 1877, and that Mrs. Bland, the other heir, died during the same year, but after that he waited more than five years before commencing suit, and the heirs of Mrs. Bland were affected with all the notice chargeable to her. If it be that the statute of seven years (Mansf. Dig. sec. 4471) is not applicable to Adams, yet, according to the view we have taken, he is barred by the statute of five years (Mansf. Dig. sec. 4474) applicable to judicial sales. *Hindman* v. *O'Connor*, 54 Ark. 627.

If we were able to find from the evidence that Fleeman was guilty of positive or actual fraud in the sale and purchase, or that he in any way concealed the facts

from plaintiffs, our conclusion would be different; but while there may be circumstances pointing to actual fraud, they are not, in our opinion, sufficient to establish the charge. There is nothing to show any effort at concealment. The case, as we hold, is one of constructive fraud only, as to which the rule is less rigid than where actual fraud or concealment has been perpetrated. Buswell on Limitations, sec. 385; *Wilmerding* v. *Russ*, 33 Conn. 67.

The case at bar is different from that class of cases wherein the administrator has not accounted for property which has come to his possession, or has not in any way paid over the proceeds thereof, or where there has been no order of court for him to do so, or where there is no right of action until final settlement or order to pay over, as in *Harriet* v. *Swan*, 18 Ark. 495; *Brinkley* v. *Willis*, 22 Ark. 1, and other cases cited by counsel for plaintiffs.

In *Harriet* v. *Swan*, at page 505, the court said: "In May, A. D. 1844, Mrs. Barden made her last settlement with the probate court, showing in her hands a balance belonging to the estate, which balance was struck from an aggregate, which included the appraised value of the appellants. She never, afterwards, surrendered these effects to distributees, or divided them between herself as dowress and such distributees, or made any effort to do so, so far as anything appears on this record; on the contrary, she never closed the administration in any way, or sought any discharge from it, as is expressly admitted; and from everything that appears on the record, from the time of that settlement (her will having been made some four years previously) until the day of her death, the affairs of the estate, and the possession of the slaves, seem to have been, in all respects material to the question we are considering, in the same condition that it had been from

the death of her husband up to the time of that settlement." At pages 506-7 the court further said : "The rule is, that 'if a trustee is in possession, and does not execute his trust, the possession of the trustee is the possession of the *cestui que trust;* and if the only circumstance is, that he does not perform his trust, his possession operates nothing as a bar because his possession is according to his estate.' "

In the case of *Brinkley* v. *Willis*, 22 Ark. 1, the administrator had wholly failed to account for the property or its proceeds ; besides, it seems the plaintiff, Mrs. Brinkley, was a married woman at the time the cause of action arose. The court said (at pages 5 and 6) : "We are not certain that any cause of action existed against Willis concerning the slave George, till Willis had swapped him to Russey, which was about or near the time when the infant, Nancy Floyd, became Nancy Brinkley, and who thenceforward has been under the disability of coverture. And more especially because the defendant Willis, as an executor and therefore a trustee, charged with the execution of an express trust till discharged therefrom by due course of law, would hold the property, or its proceeds, in trust for the legatees, without he had, by notorious acts hostile to their claim and right, renounced the trust and converted the property to his own use."

Moreover the court in that case refused to be bound by the statute of limitations. But our general statute of seven years (Mansf. Dig. sec. 4471) in reference to lands in express terms applies to " any action or suit, either in law or equity," and the statute of five years (Mansf. Dig. sec. 4474), while not referring in express terms to courts of equity, seems equally as comprehensive ; it says : "All actions against the purchaser, his heirs or assigns, for the recovery of lands sold at judicial sales shall be brought within five years after the

4. Statutes of limitation binding in equity.

date of such sale, and not thereafter; saving to minors and persons of unsound mind the period of three years after such disability shall have been removed."

These statutes are equally applicable to and binding upon courts of law and courts of equity, unless the delay after the cause of action accrues is superinduced by fraud or concealment. They operate upon the *cause* rather than the *form* of action. *McGaughey* v. *Brown*, 46 Ark. 34; *Mitchell* v. *Etter*, 22 Ark. 178; *Hindman* v. *O'Connor*, 54 Ark. 627; *Alvis* v. *Oglesby*, 87 Tenn. 172, 10 S. W Rep. 313.

Lot 3 embraced the homestead of Adams. By clerical error or mistake this tract was neither described in the petition or order of sale. It was advertised, appraised and sold, however, as if it had been described in the petition and order of sale, and it seems to have been the understanding of the probate judge, administrator and his attorneys, that it was so described and ordered to be sold, but the error was not discovered until a short while before the suit was brought in the United States court. It is argued by counsel for plaintiffs that the sale was on this account absolutely void. It is unnecessary for us to decide this question; for, if the proposition be admitted, it cannot strengthen plaintiffs' case; because, this tract having been set apart to Mrs. Fleeman as her dower in the real estate before the sale, she held possession of it as such until her death in 1872, at which time all the debts had been paid, and the time had expired for probating other claims. The administrator had no right to possession of the land after Mrs. Fleeman's death, and there was no duty imposed upon him as administrator in reference to it. *Reed* v. *Ash*, 30 Ark. 775; *Stewart* v. *Smiley*, 46 Ark. 376. His deed, if void, formed color of title under which he has openly and continuously held possession of the land as his own, of which fact plaintiffs had actual knowledge.

Lot 9 in block 20 and lot 5 in block 28 in the town of Ozark were purchased by Fleeman at execution sale to satisfy a judgment in favor of the estate, in 1867. The tract designated as lot 1 in the record is situated in Sebastian county. The estate held a mortgage upon this tract to secure $646.86, which was foreclosed by decree of court; the land was sold August 2, 1869, and the attorney in charge of the proceedings bid it off in Fleeman's name at $505.00. Fleeman was not present at the sale of this tract, and did not know it was bid off for him until informed by the attorney. He charged himself with his bid in each case, and afterwards sold part of the Ozark property and all of the tract in Sebastian county for more than he bid for them. There was no concealment of the facts or intentional fraud in either purchase; both were made in the absence of higher bidders. As to these tracts Fleeman was not a trustee of an express trust; but by his purchase of them he became clothed by operation of law with a constructive or implied trust only, as held by this court in *Jones* v. *Graham*, 36 Ark. 400. See also *Harris* v. *King*, 16 Ark. 124. The general rule is that the statutes will bar a constructive trust. *Hindman* v. *O'Connor*, 54 Ark. 627. Counsel in argument have urged no ground for relief as to the other tracts, and we find none disclosed by the record.

The decree of the court below, in so far as it is inconsistent with this opinion, is reversed, and the case will be here dismissed at the cost of plaintiffs.

Mansfield, J., being disqualified, did not sit in this cause.