## DUDDING v. PITMAN.

No. 20070.   Opinion Filed June 25, 1929.

Rehearing Denied Sept. 24, 1929.

Archibald Bonds, for plaintiff in error.

Leahy & Brewster, for defendant in error.

RILEY, J.   John R. Dudding, plaintiff in error, was appointed guardian of the estate of Wilson S. Pitman, a minor, December 31, 1924, and removed as such guardian May 2, 1928, by order of the county court of Muskogee county.

On December 30, 1926, that county court, upon the petition of the Commercial National Bank of Independence, Kan., ordered that certain personal property then held by Dudding as such guardian be surrendered and delivered to that bank.   The basis of that order was the fact that Pitman, the minor, had removed to Kansas, and the bank had been appointed guardian in Wilson county, Kan.   The subject-matter of the order was "all notes, stocks, bonds, money and personal property of every kind and description which he now has on hand."

Thereafter, as before, Dudding continued to act as guardian, and he collected royalties and rents arising from the minor's estate located in Oklahoma.   Dudding, as guardian, filed his annual report for the period January 1, 1927, to December 31, 1927, and amongst other items of expenditure, listed as "miscellaneous expenses" the following:

Wilson S. Pitman & Trustee June 28, 1927—$1,955.00
Wilson S. Pitman & Trustee Dec. 28, 1927— 1,230.00
Aggregating $3,185.00.

Thereafter, and on March 28, 1928, the county court issued to Dudding, as guardian, a citation, commanding him to appear on April 5, 1928, to show cause why he should not be removed as guardian for making unwarranted disbursements, wastefulness, and gross mismanagement.

Dudding, guardian, filed response in which mismanagement of the estate was denied.   It was alleged that the minor was a resident of Kansas, and that in that state majority rights had been conferred upon him.   A copy of such a judgment of the Kansas court was attached which by its text

"decreed that full rights of majority within the state of Kansas are hereby conferred upon Wilson S. Pitman, and that the said Wilson S. Pitman shall hereafter have and exercise full rights and power to hold, convey, and dispose of his property within this state."

It being also shown that Pitman, a minor, had entered into a trust agreement with the Commercial National Bank of Independence, Kan.

Dudding moved for judgment on the pleadings.   The motion was overruled.   The cause proceeded to trial, and on May 2, 1928, the court found and adjudged that Dudding, guardian, on June 28, 1927, had withdrawn from funds of the minor the sum of $1,955, as evidenced by check payable to order of Wilson S Pitman and the Commercial National Bank of Independence, Kan., trustee, and that on December 28, 1927, he had withdrawn the sum of $1,230, upon a check to same payees; that the aggregate of said checks, $3,185, was withdrawn from the funds of said ward without authority of

court, and that the same should be surcharged against the guardian and his bondsmen. The surcharge was made, the guardian was removed, and a successor appointed.

Upon appeal to the district court the judgment of the county court was in all respects affirmed.

This appeal is presented from the order overruling motion for new trial on the district court's judgment.

Plaintiff in error, Dudding, now says:

"All errors complained of resolve themselves into one proposition and that is given by assignment No. 10, which is as follows:

" 'That the court erred in refusing to rule, hold and decide that the situs of the personal property of Wilson S. Pitman, is, or was, in the state of Kansas, the same being the state of his residence and citizenship and that a contract or transaction had with him in Kansas concerning his personal property is binding in Oklahoma.' "

The contention of plaintiff in error is:

(1) Majority rights were conferred upon this minor in Kansas. He became sui juris.

(2) The laws of a sister state are presumed to be the same as the laws of this state, without an affirmative showing to the contrary.

(3) The law governing personalty, section 8544, C. O. S. 1921, is:

"If there is not law to the contrary in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile."

Loftis v. Farmers' & Mechanics' Nat. Bank, 133 Pa. 97, 19 Atl. 347, 7 L. R. A. 313:

"The settled general rule is that the validity of a transfer of personal property is to be determined by the law of the domicile of the owner."

Consequently it is urged the situs of the personal property of Pitman was divested from the jurisdiction of the courts of Oklahoma and vested in the proper court of Kansas. Full faith and credit will be given to acts and judgments of a court of a sister state. Harding v. Harding, 198 U. S. 317; 23 Cyc. 1345.

The principle is well settled that a "voluntary conveyance of personal" property "good by the law of the place where it was made, passes title wheresoever the 'property' may be situated." Hovt v. Thompson, 19 N. Y. 224; Edgerly v. Bush, 81 N. Y. 203; Aetna Ins. Co. v. Aldrich, 26 N. Y. 96; Minor et al. v. Cardwell, 37 Mo. 350.

In 5 R. C. L. 927, the rule is stated:

"Personal Property. The dominion of a state over personal property within its borders is complete and its right to regulate its transfer and subject it to process and execution in its own way and by its own laws is unquestioned, though by a legal fiction generally recognized by county, personal property is supposed to adhere to the person of the owner and is usually considered as having no situs other than his domicile."

Thus far we have cited practically all cases relied upon by plaintiff in error, and we have set out the reasoning underlying his contention. These are weighty principles. These are sound cases where the facts are applicable. We would not hesitate to follow them, but for the peculiar situation here presented by the facts in the case at bar.

We further quote from plaintiff's brief:

"No state will suffer laws of one to interfere with her own; and in the conflict of laws, when it must often be a matter of doubt which shall prevail the court which decides will prefer the law of its own country to that of the stranger. Smith v. McAtee (Md.) 92 Am. Dec. 641."

Kersey v. McDougal, 79 Okla. 53, 191 Pac. 594, lays down the rule that:

"* * * The order of the court transferring the personal property of the minor to the foreign guardian and the filing with the county court of the receipt therefor of the foreign guardian of the absent ward did not suspend the power of the local guardian over the residue of the property of the estate of the minor remaining in Oklahoma in any particular. * * *"

Section 6583, C. O. S. 1921, provides:

"In all cases the court making the appointment of a guardian has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward."

The rule stated in Ex parte Spurrier, 111 Okla. 242, 238 Pac. 956, is:

"When a county court has acquired jurisdiction of a minor child, and appoints a guardian of its person and property, the minor becomes a charge of the state, and subject to the control of the court, and a guardian cannot delegate his powers of guardianship to another, nor dispose of the custody and control of his ward by assignment without the approval of the county court."

We hold the guardian is estopped to deny the authority of the county court of Muskogee county to control him in the disbursement of funds of the minor, for the reason

that the guardian will not be permitted to renounce or disregard the authority creating him.

Such is the rule in Anderson v. Anderson, 45 Okla. 653, 146 Pac. 709:

"One who has been appointed guardian, and who has acted and received funds as such, is estopped to avoid liability therefor by denying the guardianship relation; and if he has done acts as guardian, he is estopped to deny the validity of such acts or to assert claims in conflict therewith."

As pointed out in the cited case, following the rule in California and New York, the guardian, by accepting the appointment and the estate, placed himself within the jurisdiction of that court and became an officer of that court and was responsible to it for the faithful performance of his trust, and he is forever estopped by the record from denying his accountability. People v. Norton, 9 N. Y. 179; Irwin v. Backus, 25 Cal. 214, 85 Am. Dec. 125; First Nat. Bk. v. S. W. Security Ins. Co., 95 Okla. 259, 219 Pac. 690.

Section 4972, C. O. S. 1921, defines certain minors to be "males under 21 years of age." This ward is admitted to be under 21 years of age. The guardian withdrew funds of the minor. When called to account he responds, saying in effect that majority rights have been conferred upon the minor by another jurisdiction and that he owes no accounting to the court of original jurisdiction. Even if the minor had become of age, it would seem the guardian would be in duty bound to render a final accounting.

It is to be noted that the language of the decree of the Kansas court confers majority rights within the state of Kansas. It had been held that removal of disabilities of a minor is a special statutory power and that such decree is not attended with the usual solemnity accorded a judgment. Marks v. McElroy (Miss.) 7 So. 408; Brown v. Wheelock (Tex.) 12 S. W. 111; Watson v. Peebles (Miss.) 59 So. 881.

Limitations are placed upon the full faith and credit clause of the Constitution of the United States, as disclosed in Cole v. Cunningham, 133 U. S. 107, 33 L. Ed. 538:

"The Constitution did not mean to confer any new power on the states, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of the states domestic judgments to all intents and purposes, but only gave a general validity, faith, and credit to them as evidence No execution can be issued upon such judgments without a new suit in the tribunals of other states, and they enjoy, not the right of priority or privilege or lien which they have in the state where they are pronounced, but that only which the lex fori gives to them by its own laws, in their character of foreign judgments."

The case of Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 8 S. Ct. 1370, 32 L. Ed. 239, states the rule:

"Those provisions establish a rule of evidence, rather than of jurisdiction. While they make the record of judgment rendered after due notice in one state conclusive evidence in the courts of another state or of the United States of the matter adjudged, they do not affect the jurisdiction, either of the court in which the judgment is rendered, or of the court in which it is offered in evidence. Judgments recovered in one state of the Union, when proved in the courts of another government, whether state or national, within the United States differ from judgments recovered in a foreign country in no other respect than in not being reexaminable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

In Frey v Nielson (N. J.) 132 Atl. 765, it is stated:

"Comity between nations and states is not the right of one state to have its statutes and judicial decisions followed in another state, but a courtesy, as it were, extended by one state to another in the construction of statutes and decisions of a foreign state if not in contravention of its own statutes and decisions."

Const. U. S. art. 4, sec. 1, does not require courts of state to give effect to adoption proceedings of another state.

"No court can enforce its process beyond the limits of the sovereignty which ordained and established such court." 34 C. J. 508.

Our court held in Decker v. Hickman, 116 Okla. 65, 243 Pac. 516:

"A judgment of a court of record conferring majority rights upon a minor does not have extraterritorial effect."

It is said in the opinion:

"It is the province of each state and the court thereof to determine when and how resident minors may sell and convey their real estate in their own right. The intentions and purposes of a state in relation to the management, control and disposition of a minor's estate, would be defeated if the judgment of a court of record conferring majority rights upon a minor was given extraterritorial effect. Therefore the judgment of the district court of Grayson county, Tex.,

in conferring majority rights upon Oliver Morris, did not authorize him to sell and convey his property situated in Bryan county, Okla., in his own right by his own personal act. State v. Bunce, 65 Mo. 349; Wilkinson v. Buster, 26 So. 940, 124 Ala. 574; Marks v. McElroy, 7 So. 408, 67 Miss. 545; Hindman v. O'Connor, 16 S. W. 1052, 54 Ark. 627, 13 L. R. A. 490; Brown v. Wheelock, 12 S. W. 111, 75 Tex. 385."

State to Use of Gilbreath v. Bunce et al., 65 Mo. 349, holds:

"An order of a court of another state made in conformity to a statute of that state, and purporting to relieve an infant residing in that state from the disability of nonage can have no operation in Missouri."

In the cited case the state of Arkansas specifically adjudged the removal of disability of nonage for the purpose of authorizing suit by the minor in the state of Missouri, a demurrer to the action by the minor was sustained in Missouri for the reason of nonage, and the Supreme Court of Missouri said on appeal:

"But the demurrer was well taken for a far weightier reason, a reason going to the very foundation of the suit. The Legislature of Arkansas does not possess the power to pass a law to override and control our laws; no more could it authorize the probate court of Washington county to do this (citing cases). Our own statutes * * * provide when infants shall attain their majority, and they must be our guide, and not the laws that emanate from a foreign jurisdiction."

Were we to hold otherwise, accounting and justice to minors, who are entitled to the full measure of governmental supervision, would be frustrated. Guardianship of Chambers, 46 Okla. 139, 148 Pac. 148; Howe v. Tarloshaw et al., 103 Okla. 268, 225 Pac. 983; In re Butler's Guardianship, 130 Okla. 241, 226 Pac. 1106.

The judgment is affirmed.

MASON, C. J., LESTER, V. C. J., and CLARK, CULLISON, SWINDALL, and ANDREWS, JJ., concur.

HUNT, and HEFNER, JJ., absent.