99 So.2d 424 (1957)
SUN OIL COMPANY et al., Plaintiffs-Appellees,
v.
Frank A. GUIDRY et al., Defendants-Appellees-Appellants.
No. 4526.
Court of Appeal of Louisiana, First Circuit.
December 23, 1957.
H. Garland Pavy, Opelousas, for appellants.
*425 Chas. F. Boagni, Jr., Opelousas, for appellees.
TATE, Judge.
Plaintiffs filed this concursus proceeding under LSA-R.S. 13:4811-4827, depositing into court the proceeds representing the proportionate share of the mineral production appertaining to a 1/1280th royalty interest in certain St. Landry Parish property.
The rival claimants to ownership of this royalty interest are: the Guidrys, appellees, the owners of the surface title to the property; and Hubert B. Thornton, appellant, claimant by reason of a mineral royalty deed dated March 18, 1936, an interest derived from which was subsequently inherited by Thornton, while a minor, upon the death of his mother. Thornton is and has been a resident of Texas throughout his life and, as an absentee, was cited through a curator ad hoc.
The substantial question concerns whether or not Thornton's mineral royalty interest was extinguished by non-user prior to the production of oil in paying quantities on December 6, 1948; such production within the prescriptive period interrupting the accrual of prescription so as to maintain the existence of a royalty interest in favor of its owner at the time, Union Sulphur Company v. Andrau, 217 La. 662, 47 So.2d 38.
Omitting a detailed factual statement, decision of this question depends upon whether or not the ten years' liberative prescriptionsuspended during Thornton's minority following the death of his mother[1]recommenced running as of August 19, 1942, when he was judicially emancipated in Texas. If it did, then mineral production took place approximately one and one-half years subsequent to the accrual of the ten years' prescription, which thus had extinguished his royalty interest because of non-user during the prescriptive period. If on the other hand prescription against Thornton's Louisiana royalty interest did not re-commence running (and remained suspended despite the Texas emancipation) until August 4, 1944, when Thornton reached the age of twenty-one years, then prescription did not accrue prior to its interruption by production, and Thornton remains the owner of the disputed royalty interest and, as such, is entitled to receive the proceeds deposited into court.
It is stipulated that the Texas decree fully emancipated Thornton, at least for purposes of Texas law, in the same manner as a Louisiana judicial emancipation does under LSA-C.C. arts. 385, 386; and it is also conceded that the Texas decree was never, prior to the present proceedings, brought to the attention of or recognized by a Louisiana court.
Thus the specific issue for our determination is: did Thornton's emancipation by a Texas judicial decree effectively give him majority status insofar as the running of liberative prescription against him in Louisiana is concerned? The District Court answered this question in the affirmative.
The curator ad hoc for the appellant absentee relies upon the rule that "an order removing the disabilities of infancy can have no operation without the state wherein it was rendered," 43 C.J.S. Infants § 30, p. 99.
Cited in support of this rule are Deason v. Jones, 7 Cal.App.2d 482, 45 P.2d 1025; Decker v. Hickman, 116 Okl. 65, 243 P. 516, and Beauchamp v. Bertig, 90 Ark. 351, 119 S.W. 75, 23 L.R.A.,N.S., 659. These cases do indeed contain expressions favorable to appellant's contentions, and they did refuse to enforce in the forums *426 concerned rights allegedly arising by reason of foreign decrees emancipating minors. But, in our opinion, the reason in each such instance is not, as urged, any general rule that foreign emancipation decrees at the minor's domicile do not confer majority status unless sued upon and especially recognized in the forum concerned.
In the Beauchamp and Decker cases, for instance, it was held that the general law of the forum gave the minor the right to disaffirm sales made before reaching twenty-one years of age, within a certain period of time thereafter. Though the minor's such prior sales of realty within the jurisdiction of the forum had been made by virtue of a foreign decree of emancipation at the minor's domicile, these decisions held that such decrees could not confer majority status for purposes of avoiding the general law of the forum concerned that all minors could disavow sales made prior to reaching the age of majority. It is to be noted that the Beauchamp case specifically, and the Decker case by implication, indicated that even a local decree removing the disabilities of minority could not confer upon the sale made pursuant thereto immunity form disavowal subsequent to reaching the age of twenty-one years.
Thus these cases are expressions of the principles that "The law of the situs of immovable property controls and governs its acquisition, disposition, and devolution", 15 C.J.S. Conflict of Laws § 19, p. 936, and that "the status of an individual is governed by the law of his domicile, but a foreign status unknown to the forum will not be recognized there," 15 C.J.S. Conflict of Laws, § 14b, p. 906. (The "foreign status unknown to the forum" would be that of a minor, emancipated or not, who could sell property before reaching the age of twenty-one and be unable to disaffirm contracts entered into before such time[2].)
These decisions do not, in our opinion, go so far as to hold that the courts of the forum would refuse to recognize the full majority status conferred by the foreign emancipation decree of the minor's domicile, if a domestic decree could recognize such a status.
Likewise, in Deason v. Jones above-cited, construing the foreign (Oklahoma) decree in question with reference to the Oklahoma statute authorizing such procedure, the California court held that the Oklahoma decree did not give the minor a "legal status of majority and did not purport to do so. It merely gave him the right to transact business with the same effect as if such business were transacted by a person who had acquired such a status of majority," 45 P.2d 1025. We do not believe this decision to be authority for the proposition that foreign emancipation decrees at the minor's domicile can never give him majority status for purposes of dealings in other statessimply that the Oklahoma decree in question did not purport to do so. Cf. also Wilkinson v. Buster, 124 Ala. 574, 26 So. 940.
But in the present case, unlike those above cited, the emancipation decree of the minor's domicile fully emancipated him and created a status relieved of all the disabilities of minority identical with the status recognized by the law of the present forum as resulting from a domestic emancipation.
The effectiveness of the decree in Texas fully emancipating the minor is stipulated.[3] As counsel for appellant correctly *427 urges, the "full faith and credit clause" of the national constitution, U.S.Const. art. 4, § 1, does not, however, require Louisiana courts automatically to accord the decree the same effect as it has in Texas, but simply to consider it conclusive evidence of whatever rights are therein decreed if and when presented for recognition by a Louisiana court. Gasquet v. Fenner, 247 U.S. 16, 38 S.Ct. 416, 62 L.Ed. 956; Beauchamp v. Bertig, 90 Ark. 351, 119 S.W. 75, 23 L.R.A., N.S., 659. As the latter case specifically notes, a foreign emancipation decree could be simply conclusive evidence of the right to sell land during minority in the foreign jurisdiction; but it still is not determinative of such right to sell land within the jurisdiction of the forum itself, such rights being regulated by the law of the forum.
But we are not, strictly speaking, here concerned with the question of whether full faith and credit should be accorded to the Texas emancipation decree, for it is stipulated that the Texas decree fully emancipated the minor. LSA-R.S. 9:901, providing that judgments of judicial emancipation of non-resident minors by the courts of the minor's domicile "upon being authenticated * * * shall be given full faith and credit in this state", and providing the method by which to secure domestic recognition thereof, is thus also not applicable to determination of the present question, for by stipulation the validity of the Texas adjudication is admitted.[4] This statute and/or the doctrine of full faith and credit, for instance, would have been called into play had either party questioned the Texas majority status of Thornton; but both parties concede this point, of which the Texas judgment is conclusive evidence.
Thus the question presently before us is not what Thornton's personal status was under Texas law, but what the effect of this admitted status has, under Louisiana law, upon the accrual of prescription within Louisiana. ("Status is the legal social relation or condition of an individual. * * Within this conception of status fall such relationships or conditions as marriage, * * * parent and child, * * * guardian and ward, * * * infancy, * * * and legitimacy," 15 C.J.S. Conflict of Law § 14a, pp. 905-906, cross-references omitted.) "A distinction should be made here between the creation and existence of a status and the incidents attaching thereto. The local law, including its Conflict of Laws rules, will control as to the latter although the status as created under foreign law will be recognized," 15 C.J.S. Conflict of Law § 14b, pp. 907-908.
It is conceded that under the law of Texas, Thornton's domicile, he became fully emancipated by the judgment and of the status of majority for all purposes under Texas law. The general rule is that the law of the individual's domicile determines his status of majority or minority (to the extent such status is recognized in the place where the question is raised), but the law of the place where the immovable property is situated determines the effect of such status.[5] 15 C.J.S. Conflict of *428 Law § 14g, p. 914, § 19, p. 936; 43 C.J.S. Infants § 20, p. 82.
As we interpret the application of this rule to the present facts, the Texas decree fully emancipating Thornton at his domicilea status recognized by Louisianais decisive that his personal status for purposes of Louisiana law is that of a fully emancipated minor. Whether or not prescription accrues against his mineral royalty interest in Louisiana depends upon whether or not under Louisiana law prescription runs against all persons of similar statusi. e., against fully emancipated minors. Cf. Restatement, Law of Conflict of Laws, Section 224: "Whether an interest in land has been extinguished or acquired by adverse possession depends upon the law of the state where the land is."
Referring to Louisiana law, we find that prescription runs against the minor over the age of eighteen fully emancipated by marriage, L.S.A.-C.C. art. 382, or judicially, L.S.A.-C.C. art. 385, in the same manner as if he were a major. LSA-C.C. arts. 382, 386; Succession of Hecker, 191 La. 302, 185 So. 32; Succession of Bonnette, 188 La. 297, 176 So. 397; Arrington v. Gray, 161 La. 413, 108 So. 790; Proctor v. Hebert, 36 La.Ann. 250, 251; Murray v. Hardee, La.App. 2 Cir., 189 So. 376, certiorari denied. Cf. Comment, "Influences of Minority upon the Accrual of Prescription", 13 Tul.L.Rev. 123 at 126-127. Thus, in our opinion, prescription commenced running in Louisiana against Thornton as soon as he attained the personal status of an emancipated minor under the law of his domicile, so that under the facts of this case the District Court correctly decided that the ten year prescriptive period elapsed without user by production interrupting it and preserving Thornton's mineral royalty interest.
Before closing, this court does wish, however, to especially commend the able curator ad hoc appointed by the court to represent the absentee defendant, who in the best tradition of the Louisiana legal profession showedalthough the matter at stake was not largegreat diligence, depth of research in collating the scattered authorities, and ability in defending the interest of the absentee upon this closely balanced and complex question of law.
For the above and foregoing reasons, the judgment of the District Court herein is affirmed.
Affirmed.
NOTES
[1] The events with which we are here concerned occurred prior to the passage of Act 510 of 1950, LSA-R.S. 9:5805, which provides that liberative prescription against mineral or royalty rights is not suspended by the minority or other legal disability of the owner thereof.
[2] See Restatement Conflict of Laws, Section 120: "If a status is created by the law of one state which is not regarded as a status by the law of another state, no effect will be given to the status as such in the second state."
[3] Thus inapplicable are such cases as Marks v. McElroy, 67 Miss. 545, 7 So. 408, Hindman v. O'Connor, 54 Ark. 627, 16 S.W. 1052, 13 L.R.A. 490, and Brown v. Wheelock, 75 Tex. 385, 12 S.W. 11, 841, holding that the jurisdictional facts must be proved before the judgment of emanicipation will be recognized.
[4] Professor Harriet S. Daggett's comments, Vol. 3, LSA-R.S., p. 168, that the purpose of the enactment was "to simplify and expedite procedures" in connection with recognition of foreign judgments of emancipation, indicate her belief that the statute was procedural in nature, setting forth a method of proving such judgments, rather than substantively providing that any Louisiana rights whatsoever flowing from the foreign emancipation could not commence prior to the date of judicial recognition by a Louisiana court.
[5] Cf., the interesting cluster of cases concerning whether a minor emancipated by the jurisdiction of her domicile is of majority status for purposes of taking possession of property inherited and in the custody of a guardian appointed by the courts of another jurisdiction in which the property is situated and in which suit is brought: Woodward v. Woodward, 87 Tenn. 644, 11 S.W. 892, which recognized a Louisiana emancipation decree as entitling the minor to possession of the property, although the law of Tennessee provided that majority is attained at age of 21; and Dudding v. Pittman, 138 Okl. 222, 280 P. 801 and State, to Use of Gilbreath v. Bunce, 65 Mo. 349, which reached contrary results. The Woodward case contains a historical discussion of the domiciliary determination of status as providing the status in another jurisdiction (when nothing in the local law indicates a conflicting policy) applicable in determining the effect of local laws of inheritance and property. See also Memphis Trust Co. v. Blessing, 103 Tenn. 237, 58 S.W. 115, which reaches same result as the Woodward case when the age of majority in foreign jurisdiction was 18, compared to the forum's age of majority as 21.

But cf. also, Burgett v. Williford, 56 Art. 187, 19 S.W. 750, 35 Am.St.Rep. 96, which held that Arkansas prescription commenced running when the non-resident minor reached the age of 18 (the age of majority by Arkansas law), although by the law of her domicile majority was not reached until she was 21 years of age.