304 So.2d 704 (1974)
Succession of Winston D. GOSS
Robert Winston G. ZUCKSWERT, Plaintiff and Appellee,
v.
Gertrude Brinkman GOSS et al., Defendants and Appellants.
No. 4778.
Court of Appeal of Louisiana, Third Circuit.
November 27, 1974.
Rehearing Denied January 9, 1975.
Writ Refused March 7, 1975.
*705 Pugh, Buatt, Landry & Pugh by Lawrence G. Pugh, Jr., Crowley, for defendants-appellants.
Charles N. Wooten, Lafayette, for plaintiff-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a suit to annul in part the last will and testament of Winston D. Goss, who died on January 30, 1973, so as to reduce certain allegedly excessive donations contained therein. The will is being contested by Robert Winston Goss Zuckswert, contending that he is the only son and heir of the testator and therefore entitled to one-third (1/3) of the testator's estate as his forced portion. After a trial on the merits, judgment was rendered in favor of the plaintiff recognizing him to be the sole legitimate child and forced heir of the decedent, declaring the will null and void insofar as it purported to donate in excess of the decedent's disposable portion, and reducing *706 proportionately the donations contained therein. From said judgment Gertrude B. Goss, widow of the decedent and executrix of the estate, in addition to the other legatees named in the will, have appealed to this court.
The pertinent facts leading up to this suit are as follows: Winston D. Goss and Mildred Fabricius were married on May 26, 1928, in the state of California. Some two years later, in August, 1930, the wife filed suit for a California divorce and subsequently an interlocutory judgment of divorce was granted on October 31, 1930. A final divorce was granted in the same proceedings on November 25, 1931.
Early in 1932 Winston D. Goss left California and returned to the home of his parents in Acadia Parish, Louisiana. He remained in Acadia Parish until his death.
Subsequently, Robert Winston Fabricius, the plaintiff herein, was born to Mildred Fabricius on August 24, 1932, (274 days after the final divorce decree and 693 days after the interlocutory judgment in Oakland, California). Winston D. Goss was listed in the birth certificate as the father of the plaintiff.[1]
Mildred Fabricius remarried in November, 1933, to David E. Zuckswert. Plaintiff's name was subsequently changed by his mother, without his knowledge, in 1947, from Robert Winston Goss to Robert Winston Zuckswert.
Winston D. Goss also married a second time on December 31, 1938, to Gertrude Brinkman, with whom he resided until his death. No children were born of this latter marriage.
As aforementioned, Winston D. Goss died on January 30, 1973, leaving a last will and testament, disposing of all of the property of his estate to various legatees (his wife by the second marriage, certain living brothers and sisters, and certain descendants of a deceased brother).
On the same day the last will and testament was prepared (December 4, 1970), Goss also executed a written affidavit to the effect that he had knowledge of the birth of plaintiff to his first wife on August 24, 1932, but that he had been separated from her since 1930 and that he was not the father of this child.
Plaintiff brought this action on April 5, 1973.
The first issue presented is whether the plaintiff is the legitimate son of the decedent, Winston D. Goss.
At the outset, this issue presents the question of which state law (California or Louisiana) would control plaintiff's status relating to his birth rights?
We are of the opinion, as was the trial judge, that California law should apply.
Under general conflict of laws doctrine, the law of the domicile, the lex domicilii, governs and controls the status of the individual. 15A C.J.S. Conflict of Laws § 14(2), p. 467; 16 Am.Jur.2d, Conflict of Laws § 12, p. 26. Likewise once status attaches, it usually follows the person and is recognized elsewhere.
Status includes such conditions as marriage, adoption, infancy, and LEGITIMACY, 15A C.J.S., supra, cited in Sun Oil Co. v. Guidry, 99 So.2d 424 (La.App. 1st Cir. 1957).
The jurisprudence of this state has recognized the status of adoption[2]infancy,[3] *707 and marriage,[4] to be controlled by the law of the domicile of the parties whose status is questioned.
Likewise, legitimacy has clearly been held to be determined by reference to the law at the place of domicile where the infant is born. See: 15A C.J.S. Conflict of Laws, § 14(8), p. 479.
In Scott v. Key,[5] 11 La.Ann. 232 (1856), an infant was born out of wedlock to a resident in the state of Arkansas. Thereafter, while continuing to reside with his natural father in Arkansas, a state statute was passed by the legislature in which the child was declared legitimate. Thereafter the father and son became residents of Louisiana. After the death of both father and son a dispute arose among the collateral heirs of the father and the heirs of the son as to inheritance of real property located in Louisiana. The court held that under Arkansas law the child was legitimate, that such status followed him across state lines, and as a result he was heir to his father under Louisiana law. It was stated as "a well settled principle, that the status or condition, as to the legitimacy, must be determined by reference to the law of the country where such status or condition had its origin". In addition the court observed that the Arkansas statute did not conflict with the Louisiana law of inheritance.
Similarly in Marzette v. Cronk, 141 La. 437, 75 So. 107 (1917) our Supreme Court recognized the legitimate status of two children, such status having been created by an 1866 Arkansas statute which declared that the marriages of all persons of color who were then living together as husband and wife were valid and that their children were legitimate.
This same principle has likewise been followed in a number of cases where children were deemed legitimate by a valid marriage (outside of Louisiana) which would not have been legal within the state, i. e. miscegenous marriageSuccession of Caballero v. Executor, 24 La.Ann. 573 (1872); common law marriagesDoiron v. Vacuum Oil Co., 164 La. 15, 113 So. 748 (1927); Chivers v. Couch Motor Lines, Inc., 159 So.2d 544 (La.App. 3rd Cir. 1964).
The spirit of comity existing between the several states of our country requires that Louisiana recognize the status of the plaintiff herein as created by California law unless by so doing we would violate the positive law or public policy of our own state, Succession of Fisher, supra.
The pertinent California law (§ 661California Code of Evidence) provides the following:
"§ 661. Legitimacy. A child of a woman who is or has been married, born during the marriage or within 300 days after the dissolution thereof, is presumed to be a legitimate child of that marriage. This presumption may be disputed only by the people of the State of California in a criminal action brought under Section 270 of the Penal Code or by the husband or wife, or the descendant of one or both of them. In a civil action, this presumption may be rebutted only by clear and convincing proof."
The California courts have repeatedly held that dissolution of marriage occurs only after a final decree of divorce has been rendered. Olson v. Superior Court, 175 Cal. 250, 165 P. 706 (1917); Louis v. Louis, 7 Cal.App.3rd 851, 86 Cal.Rptr. 834 (1970); Green v. Green, 66 Cal.App.2d 50, 151 P.2d 679 (1944).
*708 Thus under the California statute, upon birth, the presumption of legitimacy attached to the plaintiff by reason of being born within 300 (actually 274) days after the divorce between Winston and Mildred Goss.
This statute is neither in conflict with our positive law or in violation of the public policy of this state. In fact Civil Code Art. 187, in part, recognizes the same presumption of legitimacy as the California statute, insofar as a child born within 300 days of the dissolution of the marriage is concerned.
Louisiana law (Civil Code Art. 187) further provides that a person born more than 300 days after a "sentence of separation from bed and board" would lose the presumption of legitimacy. The defendants therefore contend that plaintiff should be deemed illegitimate due to the fact he was born some 693 days after the California "interlocutory decree of divorce," which allegedly has the same civil effects as our Louisiana "separation from bed and board".
Assuming, arguendo, that the "interlocutory decree" for all practical purposes can be likened to our "separation from bed and board", we do not feel that this conflict is of the type which precludes the application of California law herein. As aforementioned, the California law is not actually in conflict with Louisiana law. It is only the application of our own different law [i. e. non presumptive status of a person born 300 days after sentence of separation from bed and board] to a person deemed legitimate at birth in California that raises a conflict.
Our courts have not heretofore refused to apply the law of another state in respect to the legitimacy (or any other status) merely because the child, if born in Louisiana, would not have been considered legitimate (or adopted, etc.) under our law.
Likewise it is clear that recognizing plaintiff's status as a legitimate child is not in violation of the public policy of this state. In fact our public policy is clearly reflected by our laws, which insure that the legitimacy of a child will be maintained whenever possible [Stewart v. Stewart, 233 So.2d 305 (La.App. 1st Cir. 1970)], provide presumptions of the strictest nature [LSA C.C. Arts. 184-192], and protect helpless children, born legitimate, from illegitimation by one or both of their parents for their own selfish aims [Tannehill v. Tannehill, 226 So.2d 185 (La.App. 3rd Cir. 1969), affirmed 261 La. 933, 261 So.2d 619 (1972)].
As a result of the foregoing, we feel constrained to follow the law of California in respect to the plaintiff's presumption of legitimacy.
The next question is whether the evidence presented at trial was sufficient to rebut this presumption.
In this regard, plaintiff's mother testified essentially the following: Immediately after the marriage in 1928 between Mildred Fabricius and Winston Goss, the couple lived with the wife's parents in their home in Richmond, California. Subsequently, they moved in order that Goss could obtain work, but later returned to Richmond where they lived in a small house to the rear of Mildred's parents.
During 1930 the couple began to have marital problems and they became physically separated for a period, with Mildred moving in with her parents and Goss renting an apartment in the same town. Subsequently Mildred filed for a divorce (with the interlocutory decree being entered on October 31, 1930), however, the couple continued to see each other, often going out and spending hours alone at Goss' apartment.
Finally, around October, 1931, the two decided to attempt a full reconciliation, and as a result they moved back into the Fabricius home. The couple lived together as husband and wife through the Thanksgiving, Christmas, and New Years holidays, *709 but near the end of January, 1932, or the first of February, conditions worsened between them, and Goss left Mildred and the Fabricius home, subsequently returning to Louisiana.
Mildred further testified that she became pregnant in November, 1931, that Goss was the father of the child, that she dated no one else, and that Goss knew of her pregnancy.
After Goss left his wife early in 1932, Mildred stated she returned to the office of her attorney where she picked up the papers in her final divorce, which had been previously taken up without testimony and was rendered on November 25, 1931.
Thereafter she indicates she remarried and had no further contact with Winston Goss. She stated that from time to time she would, however, hear of the news regarding him from correspondence with the wife of Goss' brother (both of whom lived for a period in California and became friends with plaintiff's mother).
This testimony is further corroborated by depositions of Gladys Bygum (sister to plaintiff's mother), Virginia Catamby (sister-in-law to plaintiff's mother), and Dora Combes (sister to the wife of Winston Goss' brother)specifically the fact that Mildred and Winston Goss were attempting to reconcile their problems during the holiday months in 1931 and 1932 and lived as husband and wife in the Fabricius home. Dora Combes even stated that while visiting in Louisiana about 1938 that Goss inquired several times as to whether the plaintiff, his "son", looked like him.
In summary, this testimony preponderates to the effect that co-habitation between Mildred and Winston Goss took place not only after the California interlocutory decree, but also following the final divorce, and that plaintiff was conceived before the final divorce was signed. Under these facts both Louisiana law[6] and California law [7] would give plaintiff a presumption of legitimacy.
In attempting to rebut the presumption of legitimacy, defendants introduced testimony of (a) the widow of Winston Goss who could only testify that she asked her former husband whether he had any children by his first marriage and he answered in the negative; (b) a brother to the decedent who testified that the possibility of Goss having a son was talked about in the family for many years, but that the decedent had denied it, and; (c) other witnesses who merely testified only to plaintiff's reputation, character, etc. and not to facts pertinent to the issues in this case.
Defendants likewise introduced an affidavit allegedly signed by the mother of plaintiff for her final judgment of divorce wherein it was stated the parties had not been reconciled, lived together, or cohabited since the granting of the interlocutory judgment. Plaintiff's mother indicated that she did sign numerous legal papers and documents upon her attorney's advice, which she did not know the content of, at the inception of the divorce, and that she attended court at that time. Thereafter, however, she stated that she signed no other papers, nor did she go back to Court. She further denied signing any affidavit with the knowledge that it contained the statements as alleged.
The blood types of plaintiff, his mother and the decedent were stipulated to. A pathologist testifying at trial stated that the plaintiff's blood type was consistent with that of his mother and the decedent. He further indicated that the probabilities were at least one out of every four times that a combination of blood groups, as alleged, would result in plaintiff's blood type.
*710 Under the foregoing evidence presented the trial judge concluded that defendants failed to rebut the presumption of legitimacy granted to the plaintiff. We find no manifest error in this conclusion.
The next issue is what inheritance rights, if any, the plaintiff has, as legitimate son of the decedent Winston Goss.
At the outset we can quickly dispose of the defendants' assertion that plaintiff is estopped from asserting any claim to this estate by reason of the doctrine of equitable estoppel. It is argued that the doctrine applies because plaintiff found out about his alleged father almost twenty years prior to the suit, yet he made no effort to contact Winston Goss or made any claims for support, inheritance, etc. until the death of Goss in 1973. However, we find no cases which require the plaintiff to seek out his father, demand support, or otherwise be prejudiced to the extent of not being able to claim an inheritance. We opine that this is clearly not a situation for the application of the doctrine of equitable estoppel. None of the elements of estoppel exist. American Bank and Trust Co. v. Trinity Universal Ins. Co., 194 So.2d 164 (La.App. 1st Cir. 1966).
In regard to plaintiff's inheritance rights, the question again arises as to which law is to apply, either California or Louisiana? The trial judge applied Louisiana law and we concur in this holding.
Louisiana follows the general rule that succession to immovable property is determined by the law of the situs of the land. [Succession of Fisher, supra; Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175 (1900); Berthelot v. Fitch, 44 La.Ann. 503, 10 So. 867 (1892); Succession of King, 201 So.2d 335 (La.App. 4th Cir. 1967); Succession of Simms, 175 So.2d 113 (La.App. 4th Cir. 1965), affirmed 250 La. 177, 195 So.2d 114; Succession of Martin, 147 So.2d 53 (La.App. 2nd Cir. 1962); 15 C.J.S. Conflict of Laws § 19(1), p. 507; 16 Am.Jur.2d, Conflict of Laws § 14, p. 27] and that movable property is transferred in conformity with the law of decedent's domicile. Succession of Fisher, supra; Williams v. Pope Mfg. Co., 52 La.Ann. 1417, 27 So. 851 (1900); Succession of Simms, supra.
In this case both the domicile of the decedent, as well as the situs of his immovable property, is Louisiana.
Under Louisiana law plaintiff, as the sole legitimate child of the decedent, is a forced heir and entitled to 1/3 of all of the property belonging to his father. LSA C. C. Art. 1493.
Inasmuch as Winston D. Goss disposed of all of his property to his wife and collaterals, or descendants of the latter, these legacies are null and void insofar as they are in excess of the decedent's disposable portion and said donations have to be reduced proportionately. LSA C.C. Arts. 1502, 1504.
For the above and foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed against defendants-appellants.
Affirmed.
NOTES
[1] The certificate of birth listed the plaintiff as Robert Winston "Fabricius" (rather than "Goss"). Plaintiff's mother testified that the discrepancy was probably due to her own mother who gave this information to the hospital. The certificate of birth was subsequently corrected by affidavit.
[2] Welch v. Jacobsmeyer, 216 La. 333, 43 So. 2d 678 (1949); Succession of Caldwell, 114 La. 195, 38 So. 140 (1905); Alexander v. Gray, 181 So. 639 (La.App.2nd 1938); Kuchenig v. California Co., 410 F.2d 222 (5th Cir. 1969).
[3] Barrera v. Alpuente, 6 Mart. (N.S.) 69 (1827); Sun Oil Co. v. Guidry, supra.
[4] Gibbs v. Illinois Cent. R. Co., 169 La. 450, 125 So. 445 (1929); Parish v. Minvielle, 217 So.2d 684 (La.App.3rd Cir. 1969); Dupre v. Rochester Ropes, Inc., 216 So.2d 589 (La. App.3rd Cir. 1968).
[5] Cited in Succession of Fisher, 235 La. 263, 103 So.2d 276 (1958).
[6] LSA C.C. Art. 188, Kaufman v. Kaufman, 146 So.2d 199) (La.App. 4th Cir. 1962).
[7] § 621, California Code of Evidence"Legitimacy: Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate."