544 So.2d 1242 (1989)
Ian Jeffrey COHN & Lauren Kerry Cohn Fouros, Plaintiffs-Appellants,
v.
Herbert HEYMANN, Individually; Herbert Heymann, in his Capacity as Executor of the Succession of Jacqueline Heymann Cohn; The Heymann Foundation; Oil Center Realty Company, Inc.; Heymann's, Inc.; Heymann Commercial Buildings, Inc.; Heymann Office Buildings, Inc.; Out of Town Realty, Inc.; Southern Commercial Buildings, Inc.; and Heymann Realty Company, Inc., Defendants-Appellees.
No. 88-275.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*1243 Oscar W. Boswell II, Lafayette, for plaintiffs-appellants.
Nancy Dunning, Lafayette, for defendants-appellees.
Before FORET, YELVERTON and KING, JJ.
FORET, Judge.
The trial court granted a motion for summary judgment filed by defendants herein, and plaintiffs have appealed. Plaintiffs herein are Ian Jeffrey Cohn and Lauren Kerry Cohn Fouros. Defendants herein are Herbert Heymann, individually and as executor of the Succession of Jacqueline Heymann Cohn; The Heymann Foundation; Oil Center Realty Company, Inc.; Heymann's, Inc.; Heymann Commercial Buildings, Inc.; Heymann Office Buildings, Inc.; Out of Town Realty, Inc.; Southern *1244 Commercial Buildings, Inc.; and Heymann Realty Company, Inc.

FACTS
The following items have been filed into the record in these proceedings:
(a) Pennsylvania succession proceedings pertaining to the Estate of Jacqueline Heymann Cohn;
(b) Ancillary Louisiana succession proceedings;
(c) A certificate of death of Jacqueline Heymann Cohn.
The documents of record establish that Jacqueline Cohn died on December 28, 1980, in Philadelphia, Pennsylvania, leaving an estate valued at several million dollars, a large portion of which was real estate situated in Louisiana, and stock in closely held corporations domiciled in Louisiana. Mrs. Cohn left a will executed in the State of Pennsylvania dated July 2, 1980. The will was thereafter amended by codicil also executed in the State of Pennsylvania dated October 16, 1980. In her will, Mrs. Cohn made several cash bequests and other particular legacies. She also left her brother, Herbert Heymann, all of her corporate stock in Heymann's, Inc., a Louisiana business corporation. Additionally, she bequeathed to each of her two children, Ian Cohn and Lauren Cohn Fouros, an undivided one-fourth interest in and to all real property owned by decedent located in the State of Louisiana, to be held in trust. The remaining undivided one-half interest in Mrs. Cohn's Louisiana real estate was bequeathed to The Heymann Foundation, a Louisiana non-profit corporation. Finally, Mrs. Cohn also named The Heymann Foundation as residuary legatee.
A succession proceeding was opened in the Orphans Court Division, Court of Common Pleas of Philadelphia. Thereafter, Mrs. Cohn's will and codicil were admitted to probate and, in due course, Herbert Heymann was placed into possession of the Heymann's, Inc. stock. Additionally, the stock owned by Mrs. Cohn in several other Louisiana corporations (Heymann Realty Co., Inc.; Heymann Commercial Buildings, Inc.; Heymann Office Buildings, Inc.; Southern Commercial Buildings, Inc.; and Out of Town Realty Co., Inc.) was redeemed by approval of the Orphans Court on July 30, 1984, and the proceeds of the redemption were thereafter delivered to The Heymann Foundation as residual legatee. The probate proceedings in Pennsylvania were concluded on July 30, 1984, and an ancillary succession proceeding was opened in the State of Louisiana, pursuant to which plaintiffs therein were each placed into possession of an undivided one-fourth interest in and to all of Mrs. Cohn's Louisiana real estate.[1]
On appeal, plaintiffs contend that the trial court erred in granting defendants' motion for summary judgment as they contend the following allegations asserted in their petition raised genuine issues of material fact:
(a) that the decedent intended to use the Louisiana corporations as a means of preventing her children from obtaining an interest in Louisiana immovable property, thereby reducing their legitime in violation of the strong public policy of our State in favor of forced heirship;
(b) that decedent remained a Louisiana domiciliary at the time of her death and therefore Louisiana succession law should apply to the disposition of the decedent's entire estate, movable and immovable property;
(c) alternatively, a proper interpretation of the decedent's will indicates that she also intended to bequeath to her children, an undivided one-half interest in all immovable property located in the State of Louisiana owned by closely held corporations in which she has an interest;
(d) that the plaintiffs should be allowed to pierce the corporate veil of those Louisiana corporations owning immovable property located in the State of Louisiana in which decedent has an interest;

*1245 (e) that Louisiana should abandon the traditional conflicts of law approach to successions in order to adopt a more flexible comprehensive interest analysis and that upon doing so, it becomes clear that Louisiana succession law should apply to the disposition of all of the decedent's property, both movable and immovable.
For the reasons hereinafter assigned, we affirm the judgment of the trial court granting defendants' motion for summary judgment. Because of the number and complexity of plaintiffs' arguments, we shall address them singularly:
USE OF LOUISIANA CORPORATIONS AS A MEANS OF REDUCING PLAINTIFFS' LEGITIME IN VIOLATION OF OUR STRONG PUBLIC POLICY IN FAVOR OF FORCED HEIRSHIP
In this argument, plaintiffs acknowledge that the current position of our jurisprudence with regard to the choice of law issue presented herein is that Louisiana law applies to the disposition of Louisiana immovable property, but we defer to the law of the domicile of the decedent and place of executing the will insofar as the disposition of movable property is concerned. La.C.C. art. 10[2]; Succession of Goss, 304 So.2d 704 (La.App. 3 Cir.1974), writ ref., 309 So.2d 339 (La.1975). Plaintiffs contend that, assuming the decedent was a Pennsylvania domiciliary, she transferred her interest in Louisiana immovable property to Louisiana corporations in order to convert her ownership interest to corporate stock (movable property), the disposition of which is controlled by the laws of the State of Pennsylvania and therefore not subject to Louisiana forced heirship laws. We find this argument to be without merit. Plaintiffs do not allege that the transfers were for an inadequate consideration nor do they contend that the transfers were, for any reason, lacking in the proper formalities. We know of no cause of action that exists in this State against the estate of a decedent arising out of the transfer of immovable property to one or more corporations in exchange for stock of adequate value. The reasons behind such transactions may have been many and will, in all likelihood, never be known to anyone in view of the fact that the decedent has now been dead for over eight years. In fact, plaintiffs introduced no evidence at all, in opposition to defendants' motion for summary judgment, to indicate that the motive behind these seemingly legitimate transactions was simply to reduce the legitime of the plaintiffs. Accordingly, we find that no genuine issue of material fact is presented by plaintiffs' allegations in this regard in view of the complete lack of evidence of record in support thereof.

WAS DECEDENT DOMICILED IN LOUISIANA AT THE TIME OF HER DEATH?
Plaintiffs maintain there exists a genuine issue of material fact as to the domicile of the decedent at the time of her death. Plaintiffs contend, and correctly so, that in the event it is shown that the decedent was domiciled in Louisiana at the time of her death, then it is at least arguable that Louisiana succession law should apply to the disposition of the decedent's movable property as well. However, we have carefully examined the evidence of record and see no such genuine issue of material fact presented herein as to the domicile of the decedent at the time of her death. To begin with, plaintiffs introduced no evidence at all in support of their contention that the decedent was domiciled in Louisiana, and the evidence of record indicates otherwise. For example, in the Louisiana ancillary succession proceedings, there is filed an Affidavit of Death and Domicile stating that the deceased was domiciled in Philadelphia County, Pennsylvania, at the time of her death. Likewise, documents filed in the Pennsylvania succession proceedings list the domicile of decedent as 250 South 17th Street, Philadelphia, Pennsylvania. *1246 In short, all of the evidence of record indicates that the decedent was domiciled in the State of Pennsylvania at the time of her death. Therefore, we find no genuine issue of material fact as to the domicile of the decedent and, accordingly, plaintiffs' argument in this regard is without merit.[3]
DID THE DECEDENT INTEND TO ALSO LEAVE HER CHILDREN AN UNDIVIDED ONE-HALF INTEREST IN THE CORPORATELY OWNED REAL ESTATE LOCATED IN THE STATE OF LOUISIANA
Alternatively, plaintiffs argue that a careful reading of decedent's will establishes that the decedent intended to bequeath to plaintiffs an undivided one-half interest in all Louisiana real property owned by the decedent, individually, as well as all Louisiana real property owned by corporations in which the decedent had an interest. The provision of the decedent's will in dispute is as follows:
"B. I give an undivided one-fourth (¼) of all real property or interests in real property which I own at my death and which are located in the State of Louisiana, to my daughter, LAUREN KERRY COHN, provided she survives me, or should she fail to survive me, to her heirs, legatees or assigns, free of trust.
C. I give an undivided one-fourth (¼) of all real property or interests in real property which I own at my death and which are located in the State of Louisiana, to my son, IAN JEFFREY COHN, provided he survives me, or, should he fail to survive me, to his heirs, legatees or assigns, free of trust."
We find plaintiffs' argument in this regard unconvincing. A corporation is a separate legal entity capable of owning and disposing of both real and personal property. We cannot presume that decedent intended to transfer to her children, through the above cited provision, real property which she did not own but which, instead, was owned by corporations in which she had an interest. Nor would it even be possible for the decedent to have made such a bequest considering that she had no ownership in such corporately held real estate. It seems clear to us that the decedent intended only to transfer to her children an undivided one-half interest in all immovable property located in the State of Louisiana which she owned, individually, and nothing more. This is particularly true in light of the following provision which appears as the final provision in the decedent's will:

Accordingly, we find plaintiffs' argument as to the decedent's intent to be without merit and see no genuine issue of material fact presented thereby.
*1247 PIERCING THE CORPORATE VEIL TO ALLOW PLAINTIFFS TO ASSERT AN INTEREST IN CORPORATELY OWNED REAL ESTATE LOCATED IN THE STATE OF LOUISIANA
Plaintiffs contend that the corporations owning Louisiana real estate were not operated as corporations prior to the decedent's death. Specifically, plaintiffs maintain that the subject corporations:
(a) failed to follow statutory formalities for the transaction of corporate affairs;
(b) failed to maintain adequate corporate records;
(c) failed to hold regular shareholder and director meetings;
(d) are nothing more than alter egos of the decedent.
Because of this, plaintiffs contend that we should disregard the corporate entity of the subject corporations and treat the corporately owned property as property owned by the shareholders individually. Accordingly, plaintiffs maintain that we should consider the decedent's proportionate interest in the corporately held immovable property in computing the legitime required by law.
The courts of this State have always been reluctant to disregard the corporate entity because Louisiana has traditionally considered the corporate concept to be beneficial. Harris v. Best of America, Inc., 466 So.2d 1309 (La.App. 1 Cir.1985), writ den., 470 So.2d 121 (La.1985). However, Louisiana has recognized that the corporate veil may, in certain circumstances, be pierced in order to hold the corporate shareholders liable for corporate debts. The factors to be considered in making this determination are as follows: commingling of corporate and shareholder funds, the failure to follow statutory formalities for incorporation, as well as the transaction of corporate affairs, undercapitalization, failure to provide separate bank accounts and bookkeeping records, and failure to hold regular shareholders and directors meetings. Holley v. Palermo, 461 So.2d 539 (La.App. 3 Cir.1984); West Bldg. Materials, Inc. v. Daley, 476 So.2d 554 (La.App. 3 Cir.1985). While the failure of a shareholder to run his or her corporation in the manner required by law may, in some instances, expose him to personal liability for corporate debts, we have never held that such failure will allow heirs to ignore the corporate entity in order to bring corporate assets into the deceased shareholder's estate for purposes of calculating the heirs' legitime. In short, we find no Louisiana cases recognizing such a remedy, and we decline to do so at this time. We find no genuine issue of material fact presented by these allegations.
ADOPTION OF COMPREHENSIVE INTEREST ANALYSIS FOR CHOICE OF LAW QUESTIONS IN SUCCESSION PROCEEDINGS
Lastly, plaintiffs argue that Louisiana should abandon its traditional approach to the choice of law issue presented herein and adopt a more modern, flexible interest analysis. Plaintiffs contend that, upon doing so, it becomes clear that Louisiana has the greatest interest in having its law apply to the disposition of the decedent's entire estate, both movable and immovable property. If Louisiana law does apply, then our forced heirship laws would mandate that the value of the decedent's corporate stock (movable property not otherwise subject to the laws of this State) be considered in calculating the legitime due the plaintiffs in this case. It is true, as plaintiffs point out, that Louisiana has adopted an interest type analysis to determine the applicable law in tort actions. Jagers v. Royal Indemnity Co., 276 So.2d 309 (La. 1973). However, we have not expanded this concept to include the area of successions. Louisiana conflicts of law principles with regard to testate successions are embodied in Art. 10 of the Louisiana Civil Code, which provides as follows:
"Art. 10. Laws governing form and effect of written instruments and of wills affecting movables
Art. 10. The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.

*1248 But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.
The exception made in the second paragraph of this article does not hold, when a citizen of another State of the Union, or a citizen or subject of a foreign State or country, disposes by will or testament, or by any other act causa mortis made out of this State, of his movable property situated in this State, if at the time of making said will or testament, or any other act causa mortis, and at the time of his death, he resides and is domiciliated out of this State."
In the instant case, the will and subsequent codicil were executed in the State of Pennsylvania, where the decedent was domiciled, both on the date she executed the will and at the time of her death. Accordingly, we have little difficulty in finding, in accordance with paragraph three of Article 10, that Louisiana succession law does not apply to the disposition of movable property owned by the decedent at the time of her death, even assuming that the stock may, for some reason, have been physically located in the State of Louisiana. We should point out, however, with regard to the corporate stock in question, that our courts have always held that movable property has no situs other than at the domicile of the owner. Succession of King, 170 So.2d 129 (La.App. 4 Cir.1964), writ denied, 247 La. 409, 171 So.2d 666 (1965). Thus, it would appear that we are not only dealing in this case with a Pennsylvania domiciliary and a Pennsylvania will, but we are also dealing with the disposition of movable property whose situs is considered, even by our law, to be the State of Pennsylvania. Furthermore, plaintiffs herein are domiciliaries of the State of New York. Under such circumstances, we would have little difficulty in finding, even under the interest analysis advanced by plaintiffs herein, that Louisiana succession law should not apply to the disposition of such movable property. To hold otherwise would require us to completely ignore the express language of Art. 10.
We should also make note at this point of a comprehensive law review article written by Professor Symeon Symeonides, professor of law at the Louisiana State University Law Center. In this article, Professor Symeonides poses several factual situations that could conceivably occur under Article 10, one of which involves a situation where the decedent makes a will in Texas while domiciled in Texas, whose domicile remains in that state as of the date of death. In such instance, Professor Symeonides concludes that Article 10 clearly mandates that the applicable law, insofar as the disposition of movable property is concerned, is the law of the domicile of the decedent. He further states that any other result would be "unconscionable" and contrary to the position of our sister states. With regard to the approach taken by other states and countries on this particular issue, Professor Symeonides states the following:
"Whatever their other differences, most systems on both sides of the Atlantic agree on at least one pointthat succession to movables should be governed by the personal law of the deceased at the time of death. This is an old rule which, nevertheless, has withstood the test of time. From a practical viewpoint, this rule makes possible the uniform treatment of the estate as a single unit, thus facilitating orderly planning and enhancing predictability. From a functional viewpoint, this rule honors the justified expectations of the testator and, at the same time, strikes the best possible balance between the potentially competing claims of various states in regulating his succession."
We therefore refuse to adopt the interest analysis approach advanced by plaintiffs in the instant case. We adhere to the clear language of Art. 10 and hold that the law of the state of the decedent's domicile, both at the time of her death and at the time of the making of the will and subsequent codicil, controls the disposition of movable property left by the decedent.[4]
*1249 The judgment of the trial court is affirmed, and all costs of this appeal are assessed to plaintiffs-appellants, Ian Jeffrey Cohn and Lauren Kerry Cohn Fouros.
AFFIRMED.
NOTES
[1] The trust provision pertaining to plaintiffs' interest in the Louisiana immovable property constituted an impingement on the plaintiffs' legitime and were accordingly struck down by decree of the Fifteenth Judicial District Court.
[2] Civil Code Article 10 has been redesignated as Civil Code Article 15 by Acts 1987, No. 124 § 2, eff. January 1, 1988.
[3] The record does not establish when the decedent established domicile in Pennsylvania, although the decedent's will, executed on July 2, 1980, states that she is "of Philadelphia, Pennsylvania". The decedent apparently maintained this domicile until her death on December 28, 1980.
[4] We should also note that plaintiffs argue that Succession of Guerre, 197 So.2d 738 (La.App. 4 Cir.1967), writ denied, 250 La. 933, 199 So.2d 926 (1967), warrants a finding that Louisiana law should apply to the facts of this case. We disagree. Succession of Guerre did not involve a conflicts of law issue. In Guerre, the decedent died, leaving three children. Prior to his death, he purchased fifty U.S. savings bonds made payable to individuals other than his children. The court held that Louisiana's strong interest in enforcing its laws of forced heirship would allow the heirs to pursue an action to reduce excessive donations resulting from the purchase of the aforesaid bonds. We fail to see how this holding is supportive of the position advanced by plaintiffs in this case other than to say that it is indicative of the strong interest the courts of our State have in enforcing its laws of forced heirship.